CHARLES L. CURRIER

*v.*

GEORGE W. KRETZINGER *et al.*

*Filed at Ottawa May 12, 1896—Rehearing denied October 13, 1896.*

1. CONTRACT—*joint enterprise—construction of contract as respects right of parties to share profits.* An agreement by which the parties unite for the sale of lands, providing that the profits realized shall be divided in a certain proportion and that said profits shall include any sum that may be received by either party in consideration of any aid rendered in consummating the sale, will include a bonus received by two of the parties under a contract with third parties.

2. SAME—*for division of profits not affected by contract with third party.* An agreement for the division of profits received from the sale of certain land and of any consideration received for aiding in the sale, cannot be affected by a provision of a second agreement between some of the parties to the first agreement and third parties that the former should have for themselves any bonus which might be received upon a particular transaction in respect to such lands.

3. INTEREST—*allowed on money received secretly by one to another's use.* Interest is allowable upon a share of profits agreed to be divided but secretly received and retained by one of the parties under an agreement with third parties.

*Currier* v. *Kretzinger*, 58 Ill. App. 288, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on writ of error to the Superior Court of Cook county; the Hon. WILLIAM G. EWING, Judge, presiding.

L. S. HODGES, and DENT & WHITMAN, for appellant.

TENNEY, MCCONNELL & COFFEEN, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

The appellees brought their bill in equity in the Superior Court of Cook county, against appellant, to compel him to account for certain moneys which it was alleged he had received under a certain contract between him and them, and to pay over so much thereof as they

should be found entitled to, with interest. The contract was as' follows:

"Memorandum of agreement made and entered into between C. L. Currier, party of the first part, and G. W. and J. T. Kretzinger, parties of the second part, witnesseth:

"Whereas, some time in the month of July, 1885, said parties hereto obtained for sale certain ranch properties, which they then and there agreed to unite, and co-operate with each other in attempting to procure the sale thereof in the London market, and thereafter, to that end, said first party entered into certain contracts with Hass & Haley and with George W. McCrary, and made certain advances to pay the expenses of J. T. Kretzinger, one of the parties of the second part, to London, to negotiate the sale of said properties, and agree to make such further advances as may be necessary in the premises; and whereas, said parties hereto, and each of them, have assisted and rendered various services, and contributed all possible aid they, or either of them, could render, in seeking to promote and consummate said sales, and agree to continue their efforts in this behalf; and whereas, the parties hereto desire to form themselves into a syndicate, for the purpose of securing mining and ranch properties and farming and other lands for sale, intending to include all kinds of property, both real and personal, that are salable in the market in London or elsewhere:

"Therefore, in consideration of the premises, and for the purpose of defining the interest of the parties hereto in the proceeds that may come to them or either of them, or the profits that may be realized from said sale or the sale or sales of any property made by either of them, it is agreed that all the proceeds or profits realized from the sale or sales of any of such properties that have heretofore been negotiated, made and consummated, or that may hereafter be negotiated, made or consummated, said first party shall receive one-third and the second party two-thirds thereof. This contract shall include any moneys, stock or other consideration heretofore paid or agreed to be paid, or that may hereafter be received by either party to this contract, in consideration of any aid rendered by either party to this contract in negotiating or consummating such sale. This contract is to continue with full force and effect for one year from and after the date hereof.

"It is further agreed and understood, that after the first proceeds have been received as above contemplated and provided, the said first party shall contribute one-third of the ex-

penses and the said second party two-thirds of the expenses; and that either party hereto who may be absent from the city of Chicago attending to the business contemplated by this agreement, shall receive a reasonable compensation for such time so employed.

"Witness the hands and seals of the parties hereto this tenth (10th) day of April, A. D. 1886.

CHARLES L. CURRIER,        [SEAL.]
G. W. & J. T. KRETZINGER.        [SEAL.]

"The within contract is hereby extended one year from April 10, 1887.

G. W. & J. T. KRETZINGER,
CHARLES L. CURRIER."

Afterward negotiations were instituted between Currier, J. T. Kretzinger, one Reed and others, to obtain the loan of upwards of $600,000 for one Wells, at Wellston, in the State of Ohio, and the following contract was entered into:

"CHICAGO, *September 26, 1887.*

"We, the undersigned, enter into the following agreement together, to-wit: C. L. Currier and A. C. Reed hereby agree to endeavor to secure a loan for Harvey Wells, of Wellston, Ohio, and if they are successful we hereby agree to divide equally between L. S. Hodges, J. T. Kretzinger, C. L. Currier and A. C. Reed the sum of $25,000, and C. L. Currier and A. C. Reed shall be entitled to keep for themselves any bonus of lands or other properties that they may be able to secure in this transaction over and above this $25,000.

CHAS. L. CURRIER,
A. C. REED,
L. S. HODGES,
J. T. KRETZINGER."

The amount was finally reduced to $320,000, and the commission to be received and divided became $20,000, instead of $25,000. To complete the transaction required the organization of a corporation in Ohio, and the transfer of certain coal lands and other property belonging to Wells to the corporation, and the issuing of bonds of the face value of $600,000 by the corporation, (which bonds were secured by mortgage on the corporate property,) and the sale of said bonds to the capitalist who furnished

162—33

the money, for said sum of $320,000. In addition to the commission of $20,000 a certain bonus in shares of stock was received, from the sale of which Currier received $7500. Neither of the appellees had any knowledge that Currier had received such a bonus until shortly before this bill was filed. Currier requested Reed not to inform appellees of the receipt of this bonus, for the reason that he feared they might claim a part of it under the first contract, although he thought it belonged to him under the second contract. The preponderance of the evidence shows, also, that for reasons of a prudential character, which were satisfactory to themselves, the three parties to the first contract had an understanding among themselves that Hodges and Reed, parties to the second contract, should not be informed of the existence of the first contract or of the fact that George W. Kretzinger would have any share in the gains to be derived from the venture under the second contract, but nevertheless that so much of such gains as should be received by Currier and Joseph T. Kretzinger should be subject to division between the three parties to the first contract. This secret understanding was in nowise prejudicial to Hodges and Reed, as they were not concerned in any division of the shares which Currier and J. T. Kretzinger saw proper to make with another party. But it is clear that if it was the duty of Currier and J. T. Kretzinger to account with George W. Kretzinger and between themselves, under the first contract, for all that they received under the second contract, Currier should not have concealed the receipt of the bonus of $7500, but should have accounted for the same. If, however, the second contract controlled, and the gains under it were not subject to a further division under the first contract, then Currier was under no obligation to account for the $7500. When the $20,000 was received under the second contract, each of the four signers of that instrument took $5000, and while the evidence shows, as we view it, that Currier did not at first

deny his liability to account for it to the parties to the first contract, but postponed such accounting for reasons having reference to his personal convenience, later he claimed the whole amount as belonging to him under the second contract and as not being subject to subdivision under the first.

While, from a technical point of view, there may have been some room for the opinion of Currier that the gains derived from the second contract should, as to J. T. Kretzinger, and consequently as to him and another suing jointly, be distributed and finally controlled by that contract, yet we agree with the Superior and Appellate Courts that when the objects and purposes of the two contracts, and the evidence showing the interpretation put upon them by the parties, are considered, no sufficient reason appears why an accounting should not be had between the parties to the first contract for gains and profits coming within its purview and so understood and agreed upon by the parties, but which were received by two of the parties under a contract with third parties. J. T. Kretzinger did not and does not claim the whole of the $5000 received by him, but acknowledges his liability to account for it to the two other parties to the first contract. Currier is equally liable to account for the $5000 received by him, and if so liable, is liable also to account for the bonus of $7500 which he received. The agreement in the second contract that he and Reed should have any bonus which they should receive, cannot affect his liability to account for it under a contract with other parties. The act of Currier in concealing the fact that he had received the bonus, and his apprehension, expressed to Reed, that if known the Kretzingers might claim an interest in it, are some corroboration of the testimony of the Kretzingers as to conversations between them and Currier, showing that it was understood between them that all gains under the second contract were to be divided under the first.

Currier was allowed by the decree $1200 for his time and expenses. We are disposed to think the allowance was a fair one, under the evidence.

Complaint is made also of the allowance of interest on the balance found due to the appellees, but we think this point is covered by the statute, which allows interest "on money received to the use of another and retained without the owner's knowledge."

There being no error, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*