MIDDLEBORO NATIONAL BANK ET AL., APPELLANTS, V. JAMES RICHARDS ET AL., APPELLEES.

FILED SEPTEMBER 23, 1898. No. 8292.

1. **Bonds**: CONDITIONAL · SIGNATURE: PRINCIPAL AND SURETY. If a bond in form a joint obligation is signed by a surety on condition that others are to become parties to the instrument in the same capacity, and delivery of the bond occurs without a compliance with the condition, the instrument is ineffective as to the party who so signed it, unless the obligee, prior to the delivery, was not apprised of the condition, or the signer, subsequent to execution of the bond, waived the condition.

2. ———: ———: ———. If, when delivery of such bond is made, there appears on its face that which discloses or suggests an infirmity or irregularity relative to one of the requisite signatures sufficient to cast the duty of an inquiry on the obligee, and no investigation follows, the condition and its lack of fulfillment may be potent matter of defense for the party who signed the bond conditionally in an action thereon.

3. ———: ———: ———. A surety may insist on a compliance with the plain import of his contract, inclusive, in a case like the present, of the condition which accompanied his signature; and, where the condition exacted the signature to the instrument of another party, it will not be satisfied with a subsequent ratification of the signature which had been, at the time of execution thereof, written on the paper by an unauthorized person.

APPEAL from the district court of Douglas county. Heard below before DUFFIE, J. *Affirmed.*

*Byron G. Burbank,* for appellants.

*E. Wakeley* and *W. H. De France, contra.*

HARRISON, C. J.

On September 10, 1889, Richards & Company contracted with Washington county to erect for it a building—a court house—and to furnish the material therefor, and in connection with the contract, executed and delivered to the county a bond conditioned for the due and full performance of the contract. The contractor purchased of the Bohn Sash & Door Company articles nec-

essary for use in the erection of the building, and which were used in, on, and about it, of the value in the aggregate of $4,032.43; and the plaintiffs and appellants herein assert ownership, respectively, of a portion of the account, by assignment, and, to effect its recovery, instituted actions on the bond to which we have hereinbefore referred, the basis of the rights of actions being in substance that by the terms and conditions of the contract and bond, connectedly, the bondsmen became obligated in the capacity of sureties for the contractor for the payment of the accounts for material purchased and employed in the performance of the contract. The plaintiffs were unsuccessful as to some of the defendants and have perfected an appeal from the judgment of the trial court. That the points of discussion and decision may be more clearly understood, it seems proper to insert here a statement of some of the facts and circumstances relative to the form, substance, and execution of the bond involved in the litigation. In the body of the bond appeared the names of the sureties, and in the order as follows: "J. H. Hulbert, James Morton, John Epeneter, and Albert Fall." After it had been signed by the principal, Richards & Company, it was presented to Morton for his signature. He objected to being the first of the sureties to sign the bond, and stated that it should have been taken to Hulbert, whose name was first as surety in the body of the instrument, and when signed by said party it would be in proper shape to request Morton's signature. Finally this objection was waived, and Morton signed the bond with the agreement and condition that it was not to be considered complete or to be delivered until signed by all the sureties named in it, and, if not so signed, it should be returned to him. The signature of Hulbert was next obtained, on the same condition and agreement as with Morton; and the party who had the matter in charge went to the office or place of business of John Epeneter, who was then in Europe, and procured the name of John Epeneter to be written thereon by Ep-

eneter's son, Oscar E. Epeneter, who was then "book-keeper and cashier" for his father. The signature was as follows: "John Epeneter; O. E. E." The bond was subsequently signed by the other sureties, and delivered to the clerk of Washington county, and by him given to the county commissioners when in session, on the 12th of the same month—September—and was by them approved. It appears that prior to approval of the bond the attention of the commissioners was attracted to the signature as it purported to be attached for Epeneter, and there was some discussion of the matter, and during the course thereof it was suggested, if not concluded, that the instrument was sufficient or good as a security or bond, regardless of whether Epeneter's name had been signed by some person who had authority so to do or not, or of whether Epeneter could be held bounden by the action, which ostensibly, at least, some one had taken for him. No inquiries were made relative to the matter, and it received no further attention from the county or its officers. It is also of the evidence that the son had no authority to sign this or any like instrument for the father; and it follows that the signature on the bond was without significance—had no force or effect. That John Epeneter had not himself signed the bond was a patent fact —was disclosed on the face of the instrument. This was sufficient notice to put the commissioners on inquiry, to charge them with the ascertainment of the authorization of the party who wrote it, to learn of the weight of the act or the want of it. Investigation would have developed that John Epeneter had not signed the bond, and it had not been signed in his name by any person who possessed the requisite authority for such action, or would have disclosed that he was not a party to the instrument.

On the subject of the obligation of a person signing a bond as surety with a like agreement or condition as the appellee herein, it was stated in the decision in the case of *Mullen v. Morris*, 43 Neb. 596: "Where one signs as surety a bond, which in form is a joint obligation, upon

condition that others are to sign the same with him, and it is delivered without the condition having been complied with, the instrument is invalid as to the one so signing as surety, unless the obligee, prior to the delivery, had no notice of such condition, or the surety, after signing, waived the condition." And further: "Where such a bond is delivered to the obligee without being executed by all the persons named in the body thereof as obligors, it is sufficient to put the obligee upon inquiry whether those who signed consented to its being delivered without the signatures of the others." We will add that where, as in the case at bar, the signature discloses that it was not written by the party, but by some other person, and a performance of the duty which devolved on the persons who were to approve or. disapprove it—of inquiry of the authority with which it was written—would have disclosed that it was wholly without such power and of none effect, the lack of such inquiry renders allowable and potent, in an action on the bond, the defense of a surety that he signed the instrument on the condition that it should also be signed by all the sureties whose names appear in the body of the bond, inclusive of the one as to whose signature a query appears. There was a doubt suggested by the face of the bond, which cast on the commissioners the duty of inquiry. This was sufficient notice of the infirmity to make the defense presented available.

The conclusion from the foregoing would be that the signature of John Epeneter was never in fact placed on the bond in a manner effectual to bind him, and the defense of a conditional signing or an execution of the bond with the agreement that all sureties named therein should sign before it should be operative would be sufficient for any and all as to whom it was applicable.

It is not contended that if Epeneter was not bound, the other sureties were; but it is asserted that if the instrument in question at any time after the signature became of force as to him, the condition which was interposed as a defense to the action was fulfilled, and the

bond effective as to all; and in this connection it is further urged that Epeneter returned from Europe within about two months subsequent to the time his son attached the signature to the bond, and was immediately informed of such action, and allowed it to stand—never took any steps to discredit or repudiate his son's action,—that this amounted to an affirmance of what had been done, or a ratification by the father with retroactive effect, and the signature became as if made with authority given prior thereto, not only as to Epeneter and his rights and liabilities, but with reference to the other sureties, and their relations to the bond. It was of the evidence that Epeneter was informed within two months of the date of the act that his name had been signed to the bond, and, further, that he took no steps to disaffirm it. But our inquiry here is not whether Epeneter became in some manner or for some reason liable on the bond; it is whether it was signed by him, or he became a party to it, as contemplated or required in the condition with which others of the sureties executed it. The obligation of a surety is the subject of strict construction, and will not be extended beyond its plain import, and this is applicable to a condition such as is herein involved, attendant on the assumption of the obligation. The sureties who signed this bond conditionally required that it be signed by Epeneter, not that his signature written by some other person unauthorized to do so be ratified at some time subsequent. The condition was for the signature, not for an after ratification of what purported to be it, but was not. The sureties who signed on condition could demand a strict compliance therewith, and in default thereof were not bound. On the proposition that sureties who signed on condition such as is herein invoked in the defense will not be bound where an incompleteness in the conditional requirement is shown or plainly suggested on the face of the bond, see *St. Louis Plattdeutscher Club v. Tegeler*, 17 Mo. App. 569; *Hall v. Parker*, 37 Mich. 590; *Sharp v. United States*, 4 Watts [Pa.] 21; *Fletcher v. Austin*, 11 Vt.

447; *Commonwealth v. Magoffin*, 25 S. W. Rep. [Ky.] 599; *People v. Bostwick*, 32 N. Y. 445; *People v. Hartley*, 21 Cal. 585. That subsequent ratification was not efficacious, see *Hall v. Parker*, 37 Mich. 590; *Fletcher v. Austin*, 11 Vt. 447; *Taylor v. Robinson*, 14 Cal. 396; *Wood v. Mc-Cain*, 7 Ala. 800; *McMahan v. McMahan*, 13 Pa. St. 376; *Fiske v. Holmes*, 41 Me. 441.

The judgment of the district court must be

AFFIRMED.