JAMES MORTON V. CHARLES A. HARVEY ET AL.

FILED JANUARY 5, 1899.   No. 8302.

1. **Building Contract:** PROMISE TO PAY FOR LABOR AND MATERIAL: BOND. A stipulation in a building contract *held* to embody a promise to satisfy true claims of laborers and parties who furnished material in the performance of the contract; also, that this promise of the contract was included in the obligations of the bond given to secure the fulfillment of said contract.

2. **Bonds:** CONDITIONAL SIGNATURE: PRINCIPAL AND SURETY. If a bond in form a joint obligation is signed by a surety on condition that others are to become parties to the instrument in the same capacity, and delivery of the bond occurs without a compliance with the condition, the instrument is ineffective as to the party who so signed it, unless the obligee, prior to the delivery, was not apprised of the condition, or the signer, subsequent to execution of the bond, waived the condition. (*Middleboro Nat. Bank v. Richards*, 55 Neb. 682.)

3. ———: ———: ———. If, when delivery of such a bond is made, there appears on its face that which discloses or suggests an infirmity or irregularity relative to one of the requisite signatures sufficient to cast the duty of an inquiry on the obligee, and no investigation follows, the condition and its lack of fulfillment may be potent matter of defense for the party who signed the bond conditionally, in an action thereon. (*Middleboro Nat. Bank v. Richards*, 55 Neb. 682.)

4. ———: ———: ———. A surety may insist on a compliance with the plain import of his contract, inclusive, in a case like the present, of the condition which accompanied his signature; and, where the condition exacted the signature to the instrument of another party, it will not be satisfied with a subsequent ratification of the signature which had been at the time of the execution thereof written on the paper by an unauthorized person. (*Middleboro Nat. Bank v. Richards*, 55 Neb. 682.)

5. **Peremptory Instruction:** CONFLICTING EVIDENCE. It is error to

give a peremptory instruction and direct a verdict where of the existence of facts of litigated issues there is a conflict in the evidence.

6. **Instructions:** Conflicting Evidence. A court may not give an instruction in which there is the assumption of the existence of facts relative to which the evidence is conflicting, and also submit the question of the existence of such facts to the jury.

7. ——: ——. Where a court has given an instruction in which there is expressed the existence of certain facts, or its opinion that they do exist, in a case wherein there is a conflict in the evidence relative to said facts, the error is not cured by submitting special interrogatories of their establishment, or the contrary, and the further instruction that the jury is not to be influenced in the determination of the special queries by the fact that the court has given the former instruction which embodied its opinion on the subject.

Error from the district court of Douglas county. Tried below before Blair, J. *Reversed.*

*W. H. De France* and *E. Wakeley,* for plaintiff in error.

*James H. McIntosh, contra.*

Harrison, C. J.

The firm of James Richards & Co. entered into a contract with Washington county to erect for it a courthouse, to furnish all material and perform all the labor, and in the course of the transaction gave a bond for the due and faithful compliance with the obligations of the contract, of which instrument the plaintiff in error was signer as surety. The defendant in error, Charles A. Harvey, as subcontractor, furnished some material for use in and about the building, and did some labor thereon, for all of which the agreed price was $1,650, of which sum he had been paid a part, and for the recovery of the unpaid balance instituted this action on the bond mentioned, and as a result of a trial of the issues joined was accorded a judgment. The case is presented to this court for review of the proceedings in the district court:

One of the questions raised and argued is whether the

terms of the bond in suit were sufficiently comprehensive to include any obligation of the contract by which the contractors became bound for the payment of laborers and parties who furnished material necessary to a performance of the agreement, so that, in the event of a failure on the part of the contractors to make such payment, the bond could be resorted to by the aggrieved person as it was sought to do in this case. Within the doctrine heretofore announced on this subject this question must be solved favorably to the contention of the defendant in error Harvey, the plaintiff in the suit. The stipulation in the contract relative to the payment for labor and material was included in the obligatory terms of the bond, and there was such a privity between the defendant in error and the sureties as entitled him to maintain the action against them. (*Korsmeyer Plumbing & Heating Co. v. McClay*, 43 Neb. 649.)

There are some other questions presented which relate to the assertions made in pleading certain defenses for plaintiff in error,—one in regard to a condition which he states accompanied his signature to the bond, and the non-compliance with or non-fulfillment of such condition, and his consequent non-liability; and in close connection with this is another question relating to the ratification, by one of the apparent sureties, of a signature, which had been written by some one else, and, it is contended, without authority. In an action against the sureties and on this same bond, and in which the plaintiff was a defendant, he interposed like defenses, and in an error proceeding to this court it was determined: "(1.) If a bond in form a joint obligation is signed by a surety on condition that others are to become parties to the instrument in the same capacity, and delivery of the bond occurs without a compliance with the condition, the instrument is ineffective as to the party who so signed it, unless the obligee, prior to the delivery, was not apprised of the condition, or the signer, subsequent to execution of the bond, waived the condition.

(2.) If, when delivery of such a bond is made, there appears on its face that which discloses or suggests an infirmity or irregularity relative to one of the requisite signatures sufficient to cast the duty of an inquiry on the obligee, and no investigation follows, the condition and its lack of fulfillment may be potent matter of defense for the party who signed the bond conditionally in an action thereon. (3.) A surety may insist on a compliance with the plain import of his contract, inclusive, in a case like the present, of the condition which accompanied his signature; and, where the condition exacted the signature to the instrument of another party, it will not be satisfied with a subsequent ratification of the signature which had been at the time of the execution thereof written on the paper by an unauthorized person." (*Middleboro Nat. Bank v. Richards*, 55 Neb. 682.) The rules of law then announced are applicable in the case at bar, and must govern on the points covered by them.

Of the inquiries in evidence were two which are involved in the consideration of the case at the present time, viz., did the plaintiff in error, when he signed the bond, do so conditionally? And did John Epeneter, whose name appeared in the body of and was attached to the bond as a surety, authorize the party who wrote the name "John Epeneter" as a signature on the bond so to do and for him? Relative to each of these questions there was a direct and sharp conflict in the evidence, and they were material issues of the litigation, hence were matters to be submitted to and determined by the jury impaneled to try the issues of fact. The court instructed the jury: "Under the pleadings and evidence in this case the plaintiff is entitled to recover of the defendants John H. Hulbert, James Morton, and Albert Foll the sum of $1,194.56, and such will be your verdict;" also submitted to it two special interrogatories as follows: "(1.) Do the jury find from the evidence that James Morton, at the time he signed the bond as surety, stated to James Richards that he would sign

the same only upon condition that in case the other persons, or any one of them, named in the body of the bond as sureties should not all so sign the same, said bond should be returned and delivered up to him, or words to that effect? (2.) Did John Epeneter, before he left for Europe, authorize his son, Oscar E. Epeneter, to sign his name as surety to said bond for him?" And instructed further in regard to the special question that "In answering the first interrogatory the jury will bear in mind that the burden of proof is upon the defendant James Morton to establish to the satisfaction of the jury by a preponderance of the evidence that he did sign the said bond upon the condition named. And in answering the second interrogatory the burden of proof is upon the plaintiff to prove by a preponderance of the evidence that the said John Epeneter did authorize his son to sign his name to said bond." Also in regard to the direction to return a verdict for plaintiff in connection with the special interrogatories, as follows: "The court gives the jury further instructions in this case which are to govern the jury in answering two special interrogatories submitted to the jury; and the court specially instructs the jury that the fact that the court directs the jury to find for the plaintiff is in nowise to influence the jury in determining what answers ought to be given to such special interrogatories." The general direction to return a verdict for the party indicated was erroneous for the reason that there were material issues, as we have seen, as to which there was a conflict in the evidence. On these points the judge should have expressed no opinion. He should have avoided it. What he did do was to make more than an objectionable comment on the evidence relative to these matters; it was a decision of them, and that decision was in clear terms placed before the jury. There was a withdrawal from the consideration of the jury matters of fact which it was an imperative duty to submit to it. This was an invasion of the province of the jury. There was also a direct expression of

the opinion of the judge on litigated questions in respect to which the evidence was conflicting. This was not proper. The fact that the judge further instructed the jury as to these questions did not cure the error, nor did the instruction that the fact that he had directed a verdict for plaintiff was in nowise to influence the jury in determining from the evidence the answers to be given to the special interrogatories relieve the situation. Standing alone the direction of the verdict was wholly unwarranted and prejudicial, and cannot be upheld. The opinion of the trial judge has great weight with a jury, and properly so. The jury in this case may have, in answering the special queries, been influenced by the opinion of the judge as stated in the direction for a verdict, or it may have followed the instruction not to be influenced. We cannot determine which. The answers to the interrogatories were such as made the special findings agree with the verdict, which last was as directed. The direction had for its basis the assumption or conclusion that certain disputed facts actually existed, and it was error to so state, and then submit the question of their existence or non-existence. Whether the jury followed the plain indications furnished it by the opinion embodied in the direction; or gave ear to and acted according to the other and further advice given to them by a portion at least of which it was sought to rob the direction of some of its significance, is not ascertainable. (*State v. Bartley*, 56 Neb. 810.) It follows that the judgment must be reversed and the cause remanded.

REVERSED AND REMANDED.