UTILITIES INSURANCE COMPANY, APPELLEE, V. CHARLES STUART ET AL., APPELLANTS.
278 N. W. 827

FILED APRIL 1, 1938. No. 30149.

414

*Beghtol, Foe & Rankin,* for appellants.

*Good, Good & Kirkpatrick, Lester L. Dunn* and *Ralph W. Ford, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ., and ELDRED, District Judge.

ELDRED, District Judge.

This is an action brought by Utilities Insurance Company, plaintiff, against Charles Stuart and Richard L. Kimball, defendants, upon a written contract executed under date of August 1, 1930, purporting to have been made by and between Lynton T. Block & Company, first party, alleged to be engaged in the insurance business and to operate Utilities Indemnity Exchange, as attorney in fact for the subscribers thereat, A. R. Talbot Underwriters, Inc., general agent, party of the second part, alleged to be attorney in fact for and to operate Highways Motor Underwriters, an insurance exchange insuring automobile risks, and Richard L. Kimball and Charles Stuart, third parties. The contract provides: "The third parties are now actively connected with A. R. Talbot Underwriters, Inc., and it is understood and agreed that in the event the said A. R. Talbot Underwriters, Inc., cease to be actively engaged in business * * * then the third parties * * * shall be substituted herein as the general agent with like effect as if this contract were made with them in the first instance." It is alleged that A. R. Talbot Underwriters, Inc., ceased to be actively engaged in business January 1, 1931; that while Richard L. Kimball did not sign the contract, his failure to do so was an oversight; that it was his intention to be bound by it; that he assented to and adopted the terms of the contract; and that Richard L. Kimball and Charles Stuart, on January 1, 1931, became substituted for A. R. Talbot Underwriters, Inc. The petition alleges the reinsurance by plaintiff of the liabilities of Utilities Indemnity Exchange and claims to have succeeded by assignment to the right of the subscribers of Utilities Indemnity Exchange and Lynton T. Block & Company. Plaintiff prays for recovery of amounts claimed due from defendants for insurance premiums for which, it is claimed, they became responsible as general agents.

Defendant. Stuart, answering plaintiff's petition, (1) denies all allegations therein contained; (2) alleges that the contract sued on by plaintiff never became a binding contract as to him, because it was not executed by Richard L. Kimball; and (3) that on October 30, 1930, Lynton T. Block & Company and A. R. Talbot Underwriters, Inc., entered into an agreement superseding the contract sued on in this action; and that from and after said date the contract sued on had no binding force upon any of the parties thereto. The reply of plaintiff is a general denial. The answer of defendant Kimball is a general denial.

On trial, there was a verdict and judgment for plaintiff against both defendants, and from an order of the court overruling separate motions for new trial, defendants have appealed. In this opinion the plaintiff in the lower court, appellee herein, is referred to as plaintiff, and the defendants in the lower court, appellants, are referred to as defendants.

It appears that defendants, Kimball and Stuart, and A. R. Talbot Underwriters, Inc., were interested in Highways Motor Underwriters, a reciprocal exchange, insuring automobile risks; A. R. Talbot Underwriters, Inc., was its attorney in fact; Utilities Indemnity Exchange was a reciprocal exchange, and Lynton T. Block & Company was its attorney in fact. A reciprocal exchange is defined in the testimony as: "An unincorporated association of firms, corporations and individuals who agree by written instrument called power of attorney to choose an attorney in fact to act for them in the exchange of indemnity. The attorney in fact is empowered under a reciprocal contract,—reciprocal power of attorney to handle premiums, settle losses, and in short, to carry out the business of insurance for those who join in such an association." The contract which is the foundation of this suit contains the following clause:

"Fifteenth: The third parties are now actively connected with A. R. Talbot Underwriters, Inc., and it is understood and agreed that in the event that A. R. Talbot

Underwriters, Inc. cease to be actively engaged in business or in the event that the third parties shall form a partnership or corporation and engage actively in business by way of taking over all or any substantial part of the business of A. R. Talbot Underwriters, Inc., then said third parties or the partnership or corporation to be so formed by them shall be substituted herein as the general agent with like effect as if this contract were made with them in the first instance."

The contract is signed by Lynton T. Block & Company, and by "A. R. Talbot Underwriters, Inc., by Charles Stuart, President. Attest: Richard L. Kimball, Secretary." It is also signed by Charles Stuart individually, but is not signed by Richard L. Kimball individually.

It is first urged that the defendant Stuart is not bound by the contract sued on because not signed by defendant Kimball. In brief of defendant Stuart, it is said: "Where a contract in writing is obviously drawn as a mutual agreement between several parties to be signed by all of them, it must be executed by all of such parties or it will not bind any of them." In support of this proposition defendant quotes at length from *Welsh v. Premack*, 61 S. Dak. 326, 249 N. W. 1. But, a modification to the rule presented is recognized in that case; that is, that the contract must be executed, by all parties signing it, "or otherwise acceding to its terms." To like effect is *Hess v. Lackey*, 191 Ind. 107, 132 N. E. 257; also cited by defendant. These cases are in harmony with the view of the law adopted by the trial court in this case as expressed by instruction No. 6, of which defendant Kimball complains. In *Wilcox v. Saunders*, 4 Neb. 569, cited by defendant, the question as to a party being bound on a contract by having acceded to its terms in some manner other than by signing it was not involved or considered. The same is true of *Middleboro Nat. Bank v. Richards*, 55 Neb. 682, 76 N. W. 528, and *Morton v. Harvey*, 57 Neb. 304, 77 N. W. 808, also cited by defendant. Further, in the last two cases the bond involved was signed by part of the sureties, on the condition

that it was not to be considered complete or delivered until signed by all the sureties named, which presented a different question than here involved.

While the defendant Kimball was named as party to the contract and it was prepared for his signature, there was no testimony or contention made that it was signed by Stuart on condition that it was not to become a binding obligation as to him or delivered until signed by Kimball. As to delivery, the defendant Stuart testified that when he signed the contract he "turned it over to Kimball." When asked: "Q. Did you have any understanding or agreement with him at that time that he would sign the instrument?" He answered; "No." Kimball testified as to the same matter: "Q. Did Mr. Stuart say anything to you concerning not delivering this contract to any one until you had signed it? By the Court: Shouldn't that be confined to the time? Q. Yes. I mean at the time you got the contract, exhibit 6, from him signed by him. * * * A. No, there was nothing said." Consequently, the defendant Stuart, having executed and delivered the contract, or permitted it to be delivered, is bound by the obligation therein assumed, although the contract was never signed by Kimball. *Farmers State Bank of York v. Brock,* 120 Neb. 551, 234 N. W. 92; *Kansas City Terra-Cotta Lumber Co. v. Murphy,* 49 Neb. 674, 68 N. W. 1030; *Naylor v. Stene,* 96 Minn. 57, 104 N. W. 685.

Defendant Kimball urges error in holding the contract sued on binding as to him, and challenges the rule of law stated by the court in instruction No. 6, wherein the court advised the jury:

"In order that a party may be bound by written contract it is not essential that he must attach his signature thereto. His assent may be evidenced in other ways such as by accepting the contract and acting thereunder." And applying this rule to the issues and evidence in this case, the instruction further states: "If you find from the evidence that the defendant Kimball did in fact act under the contract, whether by the name of A. R. Talbot Underwriters,

Inc., Highways Motor Underwriters, his own personal name or any other name, and received benefits from said contract, and so agreed to the same as a matter of fact, you are at liberty to find that he became bound by said contract notwithstanding the fact that he did not attach his signature individually thereto."

This instruction by the trial court is in harmony with a well-established rule of law that, in the absence of some statutory requirement or specific agreement that a contract is not to be effective until signed, assent thereto may be shown in other ways as by delivering the contract and acting under it. This rule is recognized in *Welsh v. Premack, supra,* and *Hess v. Lackey, supra,* cited by defendant. In *Ramsay Realty Co. v. Ramsay,* 135 Ia. 612, 113 N. W. 468, the facts were closely analogous to those in the case at bar, and the court there applied the rule followed by the trial court herein. In the instant case, defendant Kimball signed the contract, exhibit 6, as secretary of the A. R. Talbot Underwriters, Inc., but, although named as a third party thereto along with defendant Stuart, he did not sign it in his individual capacity, yet, after the contract had been signed as above indicated, Kimball delivered the contract to Lynton T. Block & Company. The contract provided that Highways Motor Underwriters should be liquidated. He then knew that the Highways Motor Underwriters and A. R. Talbot Underwriters, Inc., were in process of liquidation. He testified: "We were in the process of liquidation, if you want to call it that, of the Highway Motors Exchange and the A. R. Talbot Underwriters, Incorporated, at the time this contract was drawn. * * * It was known at that time that the Highways Motor Underwriters and the A. R. Talbot Underwriters would pass out of the picture as soon as this reinsurance of their business had been effected. * * * It is evidently drawn with that in mind." Defendant must be held to have known that under the terms of the contract, as soon as the liquidation of said underwriters was completed, the only parties remaining to said contract would be the parties designated

as the "first party" and the "third parties," Stuart and Kimball. Kimball having delivered the contract, under the circumstances then existing, must be held to have effectively approved it. In the case of *Ramsay Realty Co. v. Ramsay, supra,* the party seeking to avoid the contract, as in this case, signed only as an officer of a company that was a party thereto, and did not sign personally. The court in the opinion states: "True he did not sign the agreement except in a representative capacity; but he did accept the benefits of the contract, and cannot now be heard to say that he will not be bound by its burdens. It is as binding upon him as if he had personally signed it. Unless a contract is required by statute or arbitrary rule to be in writing, it need not be signed by the party to be charged, provided it be accepted and acted on by him. This doctrine is so fundamental as not to need the citation of authorities." See *Henderson v. Henderson,* 136 Ia. 564, 114 N. W. 178; *Albright v. Stegeman Motor Car Co.,* 168 Wis. 557, 170 N. W. 951, 19 A. L. R. 463; *Monarch Portland Cement Co. v. Creedon & Sons,* 94 Neb. 185, 142 N. W. 906.

Defendant Kimball in his brief urges that he never acted under the contract or received any benefits therefrom. It appears that he continued the insurance business after the charter of A. R. Talbot Underwriters, Inc., was forfeited, and being asked as to such business with reference to the time of such forfeiture: "Q. And continuing after that time, you continued to handle business,—that is, Highways Motor Underwriters continued to handle business of the Lynton T. Block & Company and Utilities Indemnity Exchange, did it not? A. I continued to handle the business that came in from these subagencies, myself. This business kept coming in and I kept sending it on to the Utilities Indemnity Company." He also made to the plaintiff company daily reports showing typewritten portions of the policies and the premiums and indorsements, policies used being the policies of the plaintiff company. However, defendant claims that none of such insurance was written under the contract, exhibit No. 6, but contends that it was

written under an oral arrangement, the exact terms of which not being shown. Much of defendant's testimony on the question here considered is largely self-serving statements, and in view of other facts and circumstances shown by the evidence, it is not convincing. The conversation sought to be proved, through which defendant was attempting to establish an oral arrangement for the writing of insurance, appears to have been had prior to the execution and delivery of the contract, exhibit No. 6, and the objections thereto were properly sustained.

There were some additional allowances made defendants for commissions over the 25 per cent. specified in the contract; that is, 2½ per cent. on account of prevention expense, and 5 per cent. on account of adjustment expense. Also allowance of $110 a month for writing of policies written in the defendant Kimball's office, formerly written at the office of Lynton T. Block & Company. This allowance appears to have been made under date of October 4, 1930. However, there is nothing inconsistent with the contract in allowing to the defendant an additional compensation for additional services. We conclude that the evidence was such as to justify the court in giving instruction No. 6, submitting that issue to the jury.

Defendant Stuart in his answer pleads (3) that on October 30, 1930, Lynton T. Block & Company and A. R. Talbot Underwriters, Inc., entered into an agreement superseding the contract sued on in this action; that from and after the 30th day of October, 1930, the contract sued on was ineffective and had no binding force upon any of the parties hereto. The court by its instruction No. 4 charged the jury:

"Where there are three parties to a contract it cannot be changed, modified, rescinded or superseded by the action of only two of such parties so as to affect rights between either or both of them and the third party. And if you find from the evidence that the defendant Stuart or the defendant Kimball or both of them became bound by the contract of August 1, 1930, you are instructed that

the contract entered into on October 30, 1930, between Lynton T. Block & Company and A. R. Talbot Underwriters, Inc. could have no effect upon said contract of August 1, 1930, so far as concerns rights and liabilities between Lynton T. Block & Company and the defendants Kimball and Stuart or either of them."

Both defendants assigned this as error. There were three parties to the contract sued on, exhibit No. 6, the third parties being the defendants. The contract of October 30, 1930, exhibit No. 10, purports to have been between Lynton T. Block & Company, first party, and A. R. Talbot Underwriters, Inc., second party. It is signed: "Lynton T. Block & Co., A. R. Talbot Underwriters, Inc., per Richard L. Kimball, W. B. Walker." It appears that W. B. Walker was superintendent of agencies for Lynton T. Block & Company. Stuart and Kimball were not parties to the contract of October 30, 1930, exhibit 10. Further, the contracts are not confined to the same subject-matter. Exhibit 6 appears to be confined to "automobile insurance with a commission of twenty-five per cent." There is an indorsement affixed to said contract, however, extending it to include the writing of "residence burglary, personal holdup, and the miscellaneous types of public liability and property damage insurance;" but neither exhibit No. 6 nor the indorsement thereon includes "workmen's compensation insurance or fleet automobile insurance;" while exhibit No. 10 covers only "workmen's compensation insurance," with a commission of 15 per cent. and "all forms of fleet automobile insurance," with a commission of 27½ per cent.

Further, the superseding or rescission of a contract would require the assent of all parties to it. "If one party to a contract furnishes a legal ground for rescission, his assent to a rescission declared by the other is unnecessary, but in the absence of such ground all the parties to the contract must assent to its rescission and there must be a meeting of their minds." 13 C. J. 601. The rescission of a contract by the parties as much requires the meeting

of the minds as does the making of the contract. *White Pine Lumber Co. v. Manufacturers Lumber Co.,* 191 Mich. 390, 158 N. W. 124. A tripartite contract cannot be rescinded or modified without the consent of all parties thereto. *Ehrman v. Rosenthal,* 117 Cal. 491, 49 Pac. 460; *Currier v. Kretzinger,* 162 Ill. 511, 44 N. E. 882. But it is urged by defendant Stuart that, until the contingency occurred making defendants general agents under the contract, he was not interested in any particular; that he was not yet a party to it, and had no rights under it; and, therefore, reasons that it was not at time of making of contract, exhibit No. 10, a tripartite contract. We cannot subscribe to such contention. Here was a contract which we must conclude from the evidence both defendants considered of value; they were interested in the Highways Motor Underwriters and also A. R. Talbot Underwriters, Inc., and knew at the time contract was drawn that not only both the Highways Motor Underwriters and A. R. Talbot Underwriters, Inc., were in process of liquidation, and that both of those organizations would "pass out of the picture soon;" but the contract was evidently drawn with that in mind. It would thus appear that they had a vital interest in the contract sued on at that time. Under such existing conditions defendant Kimball, as representative of A. R. Talbot Underwriters, Inc., entered into the contract of October 30, 1930, not, we conclude, to supersede the contract, exhibit No. 6, but to permit the handling of a line of insurance through Lynton T. Block & Company not covered by the contract of August 1, 1930. We conclude that, under the facts in this case, the giving of instruction No. 4 to the jury was not error.

On the part of the plaintiff it is contended that the defendant Stuart, by part three of his answer, pleading that the contract sued upon was superseded by the contract of October 30, 1930, pleaded a confession and avoidance, and consequently that the contract sued on stands admitted by defendant; and plaintiff cites *Manley State Bank v. Spangler,* 130 Neb. 196, 264 N. W. 459, in which it is held: "Facts

alleged in a petition to which the defendant in his answer pleads a waiver, an estoppel, or matter to avoid, will be treated as admitted, though the answer also contains a general denial." The appellee's contention appears well founded. The defendant Stuart admitted the consummation of the original contract, exhibit 6, by seeking to avoid its legal effect on the theory that it had been superseded.

It is urged by both defendants that the contract sued on was for personal services and not assignable, and error is assigned in the holding of the court that the contract had been assigned to the plaintiff: *Rice v. Gibbs,* 40 Neb. 264, 58 N. W. 724, and *Corson v. Lewis,* 77 Neb. 446, 109 N. W. 735, are cited in support of such contention. The first case involved a contract for the sale of land where payment of a portion of the purchase price was deferred. The court held the contract could not be assigned so as to permit the assignee to enforce it and compel the vendor to substitute the obligation of any other person for the obligation of the one with whom the contract was made. In the latter case, the holding was that a contract for legal services is personal in its nature; and that the client could not be required to accept the services of another attorney for the one employed. Neither of those cases is controlling under the facts involved in the instant case. The contract sued on is dated August 1, 1930, to become effective September 1, 1930; the assignment is dated February 11, 1932. A part of the account sued on was for money claimed to have been owing by defendants to Lynton T. Block & Company, attorneys in fact for Utilities Insurance Exchange, at the time of making of the reinsurance contract and the assignment. As to such part of the account, the transaction amounted simply to a transfer of a past-due account for insurance premiums. That such an account may be assigned so as to permit the assignee to recover thereon, subject to then existing defenses as between the original parties, is irrefutable. The remainder of the account sued on was for premiums claimed to be owing on insurance written by defendants after the assignment was made.

As to such items, it was an executed contract on the part of the plaintiff, Utilities Insurance Company, with nothing left to be performed but payment, by defendants of the premiums received, or for which they became responsible. The defendants had been conducting business in name of Highways Motor Underwriters. Witness Nangle, vice-president of plaintiff, Utilities Insurance Company, and also of Lynton T. Block & Company testified: "Mr. Kimball said he wanted to promote and continue retaining the name of Highways Motor Underwriters, and we agreed that the policies as written would have on the face of the policy 'Highways Motor Underwriters, Division of Utilities Insurance Company' in order to cause the name to be predominant;" and it was further stated by that witness that after the Utilities Insurance Company was organized the Highways Motor Underwriters continued to write the policies on blanks furnished by the Utilities Insurance Company. Witness Briscoe testified as to conversation between witness and defendant Kimball: "Q. Mr. Briscoe, was anything said at that time between you and Mr. Kimball about the Utilities Insurance Company? A. Yes. Q. Would you state what was said between the two of you on that subject? A. Well, Mr. Kimball asked me just when we would be able to get the stock,—the new stock company licensed in Nebraska,—he was anxious to use it." Defendant Stuart was connected with the Stuart Investment Company and as a witness testified that he kept pretty close touch with the business affairs of the company; wrote insurance during 1930, 1931, and 1932; did business through Highways Motor Underwriters, and on policies of insurance issued by Utilities Insurance Company to customers of Stuart Investment Company, the Stuart Investment Company collected the premiums. The action of the defendants in using the policies of Utilities Insurance Company, plaintiff, would necessarily indicate knowledge on their part that the contract had been transferred to such company, and by so doing they recognized that company as the principal for whom they were doing business

as general agent, thereby ratifying the assignment. 5 C. J. 884; 6 C. J. S. 1133. While defendants might have refused to do any further business with Lynton T. Block & Company as attorney in fact, after the assignment of the contract to the Utilities Insurance Company, yet, if defendants, through Highways Motor Underwriters, under such circumstances wrote business as agents on policies of the plaintiff, Utilities Insurance Company, and collected the premiums, they are now estopped to deny liability therefor.

Defendant Stuart further urges that the assignment was only for "all of the accounts receivable for premiums in the course of collection now on their books in the amount of $117,955.82;" and that for plaintiff to show title to some account against Stuart "it must be shown by evidence that there was an account receivable for premiums in the course of collection on Block's books on February 11, 1932;" and it is contended there was no such evidence; but the quotation from the contract above made, to which defendant refers, is followed by the words: "Together with all right, title and interest, both legal and equitable, and to all contracts relating to the same." It is evident from the language used, taken together, that it was the intention of such instrument to transfer to the Utilities Insurance Company all accounts receivable for insurance premiums then owing by defendants to the Utilities Insurance Exchange and Lynton T. Block & Company. Proof thereof should not be confined to Block's books, but could be shown by any competent evidence. To hold otherwise would tend to carry refinement of language to excess.

Error is assigned in failure of the court to submit to the jury a form of verdict finding for the defendant Stuart, alone, without necessarily finding for the defendant Kimball. As has been stated, the answers of both defendants contained a general denial, though admittedly defendant Stuart signed the contract. But Stuart's answer also contained the two special defenses, (a) that Stuart was not bound because Kimball did not sign the contract

sued on; and (b) that the contract sued on was superseded by the contract of October 30, 1930. The two issues thus presented raise the only defenses by Stuart not equally available to Kimball under his answer. The defendant Stuart having signed the contract sued on while the defendant Kimball did not do so, a liability might have existed as to Stuart, though none was established as against Kimball; but we fail to conceive how, under the issues and the evidence in this case, a finding could logically have been made against Kimball without a finding against Stuart also. Under the first special defense, (a) if there was proof of Kimball's liability, such defense on the part of Stuart would fail; and under the second special defense, (b) proof that the contract had been superseded or rescinded would have relieved both defendants from liability. A trial court should only submit to the jury with its instructions such forms of verdict as under the issues and the evidence might properly be returned by the jury. We conclude that the trial court was right in not submitting to the jury a form of verdict finding in favor of Stuart alone and against Kimball.

Finally, it is urged by both defendants that the evidence is not sufficient to sustain the verdict. Defendants do not dispute any particular items of the account, but challenge the method by which the plaintiff sought to establish its entire claim. The argument on behalf of defendant Stuart is largely founded on the proposition that the books of account kept by defendant Kimball were not admissible as against Stuart. At the outset, the proof of the plaintiff's case as against Stuart was less involved than the proof required as against Kimball, as Stuart personally signed the contract in his individual capacity, while Kimball did not do so. Under the terms of the contract, no partnership or corporation being formed by them, on A. R. Talbot Underwriters ceasing to be actively engaged in business, the defendants became jointly the general agents of the plaintiff company. By the contract, the general agents were obligated to procure proposals for automobile insur-

ance and collect the premiums therefor for the account of the company, all moneys received to be held and chargeable to such general agents as a fiduciary trust; all credit given by general agent should be at its own risk, it being responsible for premiums on all policies and all renewals written by it or its subagents; and at the end of each month to make full statement to company of business written and to make a full settlement with the company within sixty days thereafter. There was no occasion to prove some act on the part of Stuart tending to show an adoption of the contract by him in order that he might be bound thereby, as in the case of Kimball. Pursuant to the obligation of the contract, both defendants appear to have procured proposals for automobile insurance. Defendant Kimball operated under name of Kimball General Agency. He testified: "Q. Now this Kimball General Agency was merely yourself doing business under that name, is it not? A. Yes. Q. And what you mean to say is that you may have collected personally that money in the name of or doing business as the Kimball General Agency, but not have reported it to the business which you were operating as the Highway Motor Underwriters, is that correct? A. I may have collected it in the local agency and not paid it over to the general agency, yes. Q. And that general agency is the agency which was known as the Highway Motors Underwriters? A. Yes." Stuart operated a separate business through Stuart Investment Company; both defendants operating through the Highways Motor Underwriters general agency. While Stuart testified he did not know through what company the Stuart Investment Company wrote insurance, witness Nangle testified as to a conversation with Stuart about the time the contract was entered into: "Q. Would you state what you said about it and what he said about it? A. At that time I told him we wanted him to sign the contract. Q. You recall whether the contract had been signed by him or not at that time? A. I don't recall. Q. Do you remember what he said about it? A. He said he was interested in getting his $50,000

out of the deposit in the state of Missouri on account of this Highways Motor Underwriters. Q. And did he say anything about the General Agency? A. Yes; and he hoped that the working out of the General Agency might recoup for him some of the losses he had suffered in this undertaking." That Stuart did, in fact, do business through Highways Motor Underwriters using the policies of the Utilities Insurance Company, plaintiff, is apparent from his own testimony: "Q. And that Stuart Investment Company did do business, did it not, with the plaintiff, the Utilities, that is, did do business using the policies of the plaintiff, the Utilities Insurance Company, did it not? A. I think so. Q. And it did business through the Highways Motor Underwriters, did it not? A. Well, I think so. Q. And on the policies that the Utilities Insurance Company issued to customers of the Stuart Investment Company, the Stuart Investment Company collected the premium, did it not? A. Yes, sir. Q. And where were those premiums paid? A. Well, whoever we had the contract with. Q. Were they paid to Highways Motor Underwriters? A. I imagine so if they had the contract,— wherever the contract existed." Included in the account involved herein are two items for risks on policies in the plaintiff company written through Highways Motor Underwriters covering automobiles of the defendant Stuart.

To prove the account sued on, witness Greiner qualified as an accountant and testified to an examination made by him of the books, records and accounts of the Highways Motor Underwriters, which were kept by or under the direction of the defendant Kimball. Witness produced and identified work sheets showing the detailed account as ascertained by him on such examination; this was analyzed and summarized on a further statement produced and identified, which itemized the account as made by him in detail for each month, and further itemized by months, insurance written for which premiums were unpaid, showing premiums unpaid for each month, and total amount due. That the Highways Motor Underwriters was the

agency through which the defendants, as general agents, were jointly acting is quite apparent. Though the Highways Motor Underwriters was under the immediate management of the defendant Kimball, that does not release Stuart from liability. The contract made Kimball and Stuart jointly general agents and created a joint relationship. Under the facts in this case, the books and records from which the accounting was made being a record of the transactions of both defendants, they were admissible in evidence as against both defendants. *German Nat. Bank of Hastings v. Leonard,* 40 Neb. 676, 59 N. W. 107; *Globe Savings Bank v. National Bank of Commerce,* 64 Neb. 413, 89 N. W. 1030.

Further, no error was assigned in briefs of either defendant on account of the admission of the testimony of the accountant, or on account of the exhibits prepared by him being received in evidence. The weight of evidence, as well as the credibility of witnesses, were questions for the jury; and there being evidence sufficient to support the verdict returned, it will not be disturbed on appeal. Finding no prejudicial error, the judgment of the trial court is

AFFIRMED.