DEPARTMENT OF BANKING OF THE STATE OF NEBRASKA AS RECEIVER AND LIQUIDATING AGENT OF THE CITIZENS STATE BANK OF CEDAR RAPIDS, APPELLANT, V. F. G. WALKER ET AL., APPELLEES.

FILED NOVEMBER 27, 1936. No. 29926.

*Seymour S. Sidner, Clarence G. Miles* and *F. C. Radke,* for appellant.

*Wagner, Wagner & Albert* and *R. D. Flory,* contra.

Heard before GOSS, C. J., EBERLY, DAY and CARTER, JJ., and MESSMORE, District Judge.

GOSS, C. J.

The district court sustained a demurrer to the petition of plaintiff and dismissed the cause, whereupon plaintiff appealed.

The department of banking brought the suit as receiver and liquidating agent of the Citizens State Bank of Cedar Rapids, Nebraska, and alleged that on October 26, 1934, the department declared the bank insolvent and proceeded to liquidate it for the benefit of the depositor-creditors of the bank; that on October 18, 1928, defendants, together with six other stockholders of the bank, held a special meeting of the stockholders for the purpose of quieting rumors about the bank, of inspiring public confidence and of persuading the then depositors to continue to deal with the bank, signed a notice (set out in full) guaranteeing to each and every depositor the full amount of each and every deposit then in the bank or thereafter made, the guaranty binding upon the heirs, executors and administrators of each of the signers; that this statement was posted in the bank lobby, and was published many times in the local paper, from shortly after October 18, 1928, until after January 1, 1931; that said statement was known to and relied upon by all depositors and others dealing with the bank down to October 28, 1931, when the operation of the bank was suspended and possession of its assets taken over by the department; that on the evening of that date a special meeting of the bank stockholders was held at which all defendants and others were present (representing 227 of the 250 shares of the capital stock) and unanimously adopted the following motion: "Moved that we liquidate the bank under our own management, asking permission of the depositors and the department of trade and commerce for

three years' time to pay the deposits in full, but paying sooner if possible; that a committee of five be appointed to assist and an agent be appointed to effect the liquidation." That the defendants, for the purpose of having the assets turned over to them for liquidation as provided for by statute, in consideration of protecting themselves against · the liability under the guaranty agreement of October 18, 1928, in consideration of keeping control of the bank assets and for the further consideration of protecting themselves on their constitutional stockholders' liability, on November 10, 1931, executed and delivered to the department of trade and commerce and to the bank an agreement as follows:

"Whereas, the capital stock and surplus of the Citizens State Bank, Cedar Rapids, Nebraska, is the sum of $27,-261.23:

"Whereas, until about two years ago the deposits of said bank amounted to approximately $275,000 and since that time, due to poor business conditions and a consistent withdrawal, the net deposits in said bank are now only about $93,000:

"Whereas, said bank, although now in a solvent condition, can no longer be operated at a profit, and due to conditions may not be able to convert its assets into cash as rapidly as may be required to meet the demands of its creditors and depositors in the usual course of business:

"Whereas, it is the express intention of the stockholders, directors, and officers of said bank to pay each and every depositor and creditor in full and to that end to convert all of its assets into cash and distribute the same ratably and equitably among said depositors and creditors; and

"Whereas, the undersigned depositors and creditors desire to have said Citizens State Bank of Cedar Rapids, Nebraska, liquidated by its officers and directors in the usual course of business and desire to avoid any possibility of a receivership.

"Now therefore it is agreed by and between the Citizens State Bank of Cedar Rapids, Nebraska, hereinafter called the bank, and the stockholders, directors, and officers of

said bank, hereinafter called the stockholders, and all of the undersigned depositors and creditors of said bank, hereinafter called the depositors,

"Witnesseth that for an— in consideration of the premises and for and in consideration of the waiver of certain deposits of the stockholders, and for and in consideration of the guaranty of payment in full to all depositors by the stockholders, and for and in consideration of the agreement of the bank to liquidate its assets in the usual course of business without delivering possession of its property and assets to the department of trade and commerce, for and in consideration of the mutual waiver by depositors of their right to demand immediate payment of their money on deposit,

"1. The bank agrees that it will diligently proceed to collect and convert all of its assets into cash and do any and all things necessary to cause an orderly liquidation of the same.

"2. The bank agrees to keep a full, complete and itemized record of each and every transaction of the bank, showing the manner of collection, sale, or liquidation of the same, and at least, twice each year to make a summarized statement of all of its acts and doings and keep the same on file for the inspection of the depositors.

"3. The bank agrees that it will not accept any new deposits.

"4. The bank further agrees to pay the depositors and unsecured creditors at least twenty per cent. of the amount of their claims on or before the 5th day of January, 1932, and to pay the balance thereof in full, without interest, as follows: Fifteen per cent. on or before the 1st day of September, 1932; twenty per cent. on or before the 1st day of March, 1933; fifteen per cent. on or before the 1st day of September, 1933; fifteen per cent. on or before the 1st day of March, 1934; fifteen per cent. on or before the 1st day of December, 1934.

"1. The depositors agree to waive any and all rights that they may have to demand payment of any and all sums due

to them except at the time or times fixed, or to be fixed, in accordance with this agreement and to that end said depositors waive the right to draw checks, sight drafts, and other instruments or orders of exchange against said bank.

"2. The depositors agree and do hereby waive any rights that they may now have or that may accrue to them in the future to request the appointment of a lawful receiver of the bank.

"3. The depositors further agree and do hereby waive any rights they may have to institute legal proceedings necessary for the collection of stockholders' double liability until all remedies under this agreement have been exhausted.

"1. The stockholders agree that they will diligently endeavor to effect a speedy and orderly liquidation of the assets of the bank and will do all things necessary to insure the successful performance of the agreement on the part of the bank to be performed.

"2. The stockholders further agree and by these presents do, jointly and severally, guarantee the full and complete performance of all of the terms of this agreement on the part of the bank to be performed and do especially guarantee a full and complete payment and satisfaction of any and all claims of the depositors at the time or times fixed, or to be fixed, and in the manner prescribed and set forth herein and for that purpose and to that end the said stockholders and each of them do hereby bind their separate estate for the payment thereof, and do further bind their heirs, executors, administrators and assigns.

"3. The stockholders hereby agree to waive payment of deposits in the sum set opposite their names until after all other depositors are paid in full.

"Deposit waived as stockholders as follows:

"This contract and agreement is made in many copies, all of which shall be considered to be original copies and it is especially agreed by all of the parties hereto that the execution of one copy by any of the parties shall be as binding as though said party had executed and delivered all of the copies.

"In witness whereof, we have hereunto set our hands this 10 day of Nov. 1931.

"(Signed by:) F. G. Walker
C. F. Orshek
Peter J. Korth
Henry Vanderloop
H. M. Ripp
H. H. Schueth
H. T. Jackson
E. G. Snyder
J. A. Kleve
J. W. Cox
J. N. Bowers
C. I. Casper
F. P. Wright"

The petition further alleges that on November 10, 1931, the bank was insolvent under the terms of the statute and that the written agreement was not for the purpose of reopening the bank or reestablishing its financial status so that it could do business with the public as a going commercial bank or for any other purpose whatsoever except for the purpose of liquidating the bank in the method provided by statute and in the agreement, under defendants' own management and control in the furtherance of their own objects and purposes as above set forth; that 235 of the depositors as of October 28, 1931 (which did not include any of defendants), owning 79 per cent. of all depositors' claims, signed the contract; that those depositors who did not sign the agreement relied on the agreement and the statute and waived their right to insist upon immediate payment of their deposits and to request a receiver for the bank; that defendant assumed complete control of the bank and of its assets, proceeded to liquidate them, and partially, at least, to perform the agreement; that all of defendants were directors, owning 209 of a total of 250 shares of the capital stock, two were president and vice-president and another was the managing officer of the bank; that all of the directors except one signed the agreement, and defendants

were in full charge and control of the bank, of its policies and affairs, and although the bank never signed the contract yet it was delivered to and remained with the department, and was delivered to the bank in its bank offices, was recognized and adopted and partially performed by the bank and thereby became its contract; that notwithstanding other depositors were not required, under the statute or contract, to sign the agreement, defendants at all times after November 10, 1931, did consent to be bound by its terms unless the bank's performance of the agreement should be frustrated by nonsigning depositors or creditors, and defendants at all times regarded the agreement as in full force and effect and permitted the department of trade and commerce to so regard it until the bank was declared insolvent and was taken over by the department of banking for liquidation on October 26, 1934; that none of the nonsigning depositors interfered at any time and the only reason defendants were prevented from further operating under the agreement was because of their failure and misdoings; that the bank was permitted by defendants to breach the contract by failing to proceed diligently to collect and convert its assets, by accepting new depositors, by failing to pay depositors and creditors the percentage of their deposits and claims in the amounts and at the times set forth in the agreement, by permitting the bank to pay some of the creditors a larger percentage than was paid to others; that defendants Schueth, Walker, Orshek, Kleve, Vanderloop, Snyder and Wright received payment of their deposits as these stood on November 10, 1931, and defendant J. N. Bowers received $28.09 of his deposit, contrary to their agreement to waive payment of their deposits until all other depositors had been paid in full; that those violations of the agreement made it necessary for the department to step in and take charge of the bank; that on October 17, 1934, the deposits in the bank remaining due and unpaid were $52,638.50.

The petition further alleges that signers of the guaranty, C. I. Casper and H. M. Ripp, are dead, their estates have

been administered and closed and all claims against them have been barred.

The petition credits $9,108.73 admitted to have been collected by plaintiff from the assets of the bank and from J. W. Cox and E. G. Snyder on their double liability as stockholders; and plaintiff prays a joint and several judgment for $43,529.77, with interest at the rate of 6 per cent. per annum from October 17, 1934, against defendants.

To the petition defendants severally demurred as follows:

"I.

"The petition of the plaintiff does not allege facts sufficient to constitute a cause of action in favor of the plaintiff and against any one of the defendants.

"II.

"The petition discloses on its face that there is a misjoinder of parties defendant in that the legal representative of the estate of C. I. Casper, deceased, and H. M. Ripp, deceased, are not made parties defendant herein.

"III.

"The contract upon which said cause of action is predicated, and marked Exhibit 'A' in said petition, contravenes 8-140 Compiled Statutes of Nebraska 1929, and is against public policy, and void.

"IV.

"The contract Exhibit 'A' attached to said petition, upon which said cause of action is predicated, was not executed and delivered, and never became effective.

"V.

"The contract Exhibit 'A' attached to the petition, upon which said cause of action is predicated, violates the provisions of 8-1,102, Compiled Statutes 1929, and is null and void.

"VI.

"The contract Exhibit 'A' attached to the petition, upon which said cause of action is predicated, contravenes 8-189, Compiled Statutes 1929, and does not comply with said statute, and is null and void.

## "VII.

"The petition discloses that the said contract was conditioned that the Citizens State Bank, of Cedar Rapids, Nebraska, assume the obligations the contract intended to impose and further discloses that the said bank did not execute the said contract.

## "VIII.

"The petition on its face discloses that the contract Exhibit 'A' attached to said petition, was of no force or validity until all the depositors of the Citizens State Bank, of Cedar Rapids, Nebraska, joined in its execution, and further discloses that less than 80% of the depositors joined in its execution.

## "IX.

"The alleged agreement set forth in paragraph 2 of said petition as the consideration for the contract Exhibit 'A' attached to the petition, contravenes 8-140 and 8-1,102, and is null and void, and furnishes no basis as a consideration for the contract upon which plaintiff predicates his cause of action."

The demurrer, which was held good by the trial court, is general in the first paragraph. The other eight paragraphs are special. The order sustaining the demurrer does not specify the ground or grounds on which it was sustained nor have we been favored by any opinion or reasons given by the trial court for the action taken.

The second point alleged a misjoinder of parties-defendant, in that the legal representatives of the estates of two of the signers of the contract were not made parties-defendant. The petition alleged that these estates had been probated and all claims had been barred. To have sued these estates would have been fruitless.

The third point of the demurrer is that the contract upon which the action is predicated contravenes section 8-140, Comp. St. 1929, and is contrary to public policy and void. This section prohibits a bank paying more than 4 per cent. interest on deposits (after April 1, 1926) and made it a crime for any officer of the bank to give, or de-

positor to receive, any further consideration as an inducement, in addition to the legal interest, for making or retaining any deposit in the bank. Such a composition or contract as was made here had no reference to or connection with the matters denounced by the section. There was no allegation or reference in the petition to any interest being paid on any deposit of the bank. The inducement to the depositors of the bank was not "in addition to the legal interest" as phrased by the statute. The purpose of the section is to prevent the payment of more than 4 per cent. interest on deposits in a state bank, and to make it unlawful for any officer of such a bank to induce the making or retaining of a deposit by any service or by any consideration of value. The result that was contemplated by the contract here was the very result that is contemplated by another section—by section 8-149, Comp. St. 1929. It was not contrary to any public policy of which we have knowledge.

The fourth point of the demurrer is that the contract was never executed nor delivered and never became effective. A demurrer admits all allegations well-pleaded. Among these allegations of the petition were that the contract was executed by defendants (and others) and delivered to the department and to the bank. That it became "effective" as a practical matter is shown by the fact that these defendants are alleged to have taken over the bank and to have proceeded to make the contract operative. From November 10, 1931, to October 26, 1934, these defendants exercised dominion over the bank, its assets and deposits, without interference from the department, from any depositor or from any creditor. Nearly all the stockholders, directors, officers and depositors signed the contract. They and the rest of each group acquiesced in and assented to the terms of the contract for nearly three years and only after the department took over the bank, because of the violation of the terms of the contract, were they heard to object.

The fifth point of the demurrer is that the contract violated the provisions of section 8-1,102, Comp. St. 1929.

That section relates to priority of deposits "not otherwise secured." We perceive no applicability to the situation here. While referred to in the brief of defendants, it seems not to be argued.

The sixth point of the demurrer is that the contract contravenes section 8-189, Comp. St. 1929, and does not comply with that statute. That section provides that, when the officers, stockholders or owners of any insolvent bank shall give a bond of a surety company authorized to transact such business, the bond approved by the department of trade and commerce, conditioned upon the full settlement of all the liabilities of such bank by such officers, stockholders or owners within a stated time, then the department shall turn over all the assets of such bank to the officers, stockholders or owners for liquidation, reserving the right, if the bank is not being liquidated in a manner satisfactory to the department, to take immediate possession of the bank for the appointment of a receiver. We do not see how the procedure here "contravened" that section of the statute. The contract did not pretend that any surety bond had been given. No one was deceived or injured by reason of the method pursued by agreement of the parties, well understood by both of them involved here and by all of the contracting parties. They undertook to do the same things and accomplish the same results that are authorized by the section. But in lieu of a surety bond, as therein provided, defendants and their associates offered their joint and several liability and the department accepted it. Thus they made a contract different from that provided for by statute but, so far as we have discovered, not prohibited by any statute. Whether it was a matter of good judgment for defendants to make such a contract or of good practice for the department to accept such a means of indemnity to assure the proper liquidation of a bank are questions quite aside of the legality of such a contract and whether, after it has been deliberately entered into and followed for years, one of the parties shall be permitted to avoid its terms. We are of the opinion that the contract, not being prohibited

by statute, is in the circumstances binding on all parties to it.

· The seventh point of the demurrer is that the petition discloses that the contract was conditioned that the bank assume the obligations the contract intended to impose and the petition discloses that the bank did not execute the contract. The petition alleges that all of defendants and signers of the contract were directors of the bank, owning 209 out of 250 total shares, that two of defendants and signers were respectively president and vice-president of the bank and another was its managing officer; that all of the directors of the bank except one signed the contract, that defendants were in full charge and control of the bank, of its affairs and of its policies, "and although the said bank never signed the contract; yet the said contract, which was signed by the said defendants and by 235 of the depositors of said bank, was delivered to and remained with the said department and said bank in its bank offices and was recognized and adopted by said bank and partially performed by said bank and thereby became its contract." We think the facts pleaded and thus admitted by demurrer show that the bank adopted the contract, pursued it for nearly three years and could not be permitted to say now, nor can others take advantage of this point now, that the contract was not binding on the bank.

The eighth point of the demurrer is that the contract was of no validity because all of the depositors did not join in its execution. The answer to that is similar to the argument heretofore made in respect to the failure of other groups to execute the contract 100 per cent. Nearly 80 per cent. of the depositors signed and the rest are alleged to have accepted, adopted and followed the contract.

The ninth and last point of the demurrer is that the contract contravenes sections 8-140 and 8-1,102, Comp. St. 1929. This consolidates points raised in paragraphs three and five of the demurrer and is therefore repetition. It has already been considered here.

This leaves the first point of the demurrer, which is a

general demurrer to the effect that the petition does not state a cause of action. Out of the abundance of caution defendants fully covered all phases of this by their other special points of the demurrer. These have already been treated fully in this opinion.

On full and careful consideration of the whole case, we are of the opinion the petition stated a cause of action against defendants. The judgment of the district court is reversed, with directions to proceed in harmony with this opinion.

REVERSED.

DAY, J., dissenting.

The department of banking of the state of Nebraska as receiver and liquidating agent of the Citizens State Bank of Cedar Rapids brought this action against the defendants, who were some of the officers of said bank, upon a contract for the liquidation of the bank. The purpose of the contract was that the officers of the bank might liquidate, rather than the department of banking. A demurrer to the petition was sustained by the trial judge. The sole question for the determination of this court is whether said ruling was erroneous. The contract is set out in the opinion.

The briefs argued and the opinion states that most of the stockholders and most of the depositors executed the contract according to its terms, but it is apparent from the petition that the contract was not executed by all the stockholders, and that under the terms of the contract it could not be effective with stockholders owning 41 shares of stock not parties to the agreement and with only 79 per cent. of the depositors agreeing to the contract. It is evident that the bank could not be liquidated by the officers if any one of the 21 per cent. of depositors objected.

The fact that 79 per cent. of the depositors and a majority of the stockholders agreed to this has no significance because this bank was to be liquidated under a contract and not under the provisions of section 8-149, Comp. St. 1929. There was no attempt on the part of the banking depart-

ment, the stockholders, or the depositors to liquidate the bank under the provisions of the above statute. In such a case it is not sufficient that "nearly all the stockholders, directors, officers and depositors signed the contract." In the absence of execution, a binding contract cannot result.

It appears that the judgment of the trial court in sustaining the demurrer was proper.