DEPARTMENT OF BANKING, APPELLEE, v. R. T. FLOTREE ET AL., APPELLANTS.

281 N. W. 857

FILED OCTOBER 28, 1938. No. 30393.

*W. J. Donahue, Williams & Williams* and *Earl Hasselbalch,* for appellants.

*Seymour S. Sidner* and *Clarence G. Miles, contra.*

Heard before ROSE, C. J., EBERLY, PAINE, CARTER and MESSMORE, JJ.

EBERLY, J.

This is an action at law brought by the Department of Banking of the state of Nebraska, receiver and liquidating agent of the Farmers State Bank of Albion, Nebraska, a corporation, against R. T. Flotree and others, upon a contract in writing, which, for convenience, we will call a contract guaranteeing the payment in full of the creditors and depositors of the bank named. A copy of this contract was attached to and forms a part of the amended petition upon which the action was tried. To this amended petition, defendants R. T. Flotree, Milton B. Krause, Robert D. Flory, E. M. Johnson, F. R. Smith, A. N. Lamb, executor of the estate of A. W. Lamb, deceased, Elizabeth A. Morehead, executrix of the estate of S. B. Morehead, deceased, Marie Fischer, administratrix of the estate of William Fischer, deceased, Henry Becker, Elsie Zuber, administratrix of the estate of Fred Wiegman, deceased, and James T.

Clipston, joined in answer. To this answer plaintiff filed reply. Defendants T. B. Bowman, M. C. Nore and Elsie Zuber, administratrix of the estate of Fred Wiegman, deceased, also, in addition to the answer already referred to, filed separate answers. To the separate answers thus filed, the plaintiff filed replies. On the issues thus formed, a jury was waived, evidence was introduced, and, at the conclusion of the trial, findings of fact and a judgment were made and entered by the district court against all defendants, excepting John Bentjen and James T. Clipston, in a total sum of $95,821.41. To the judgment, motions for new trial were filed by defendants, upon consideration of which the district court, on February 4, 1938, reduced the amount of the judgment to $70,985.21. From this final judgment, the defendants appeal.

Appellants present three propositions in this court to sustain their appeal, viz.: "1. The plaintiff has no statutory or contractual right to bring this action. 2. A contract signed upon condition that others will also sign is unenforceable if such others fail or refuse to sign. 3. The plea of estoppel is not available to the plaintiff under the facts of this case."

In consideration of the first contention of appellants, it will be noted that the same question was presented to this court in *Department of Banking v. Walker,* 131 Neb. 732, 269 N. W. 907. An examination and comparison of the records discloses that in the *Walker* case, as well as in the instant case, copies of the contract sued upon were attached to each petition and expressly made a part thereof. While the names of the defendants, the respective dates, and amounts, recited in these several contracts, conform to the special transaction to which the contracts respectively pertain, the substantial agreements contained therein are identical and are framed in substantially identical language. In the *Walker* case, a general demurrer was sustained in the district court, but such ruling was reversed in this court. This decision must be considered in the light of the following principles:

"A written instrument incorporated as an exhibit and expressly made a part of a pleading, and a part of a cause of action or a defense therein stated, controls the allegations thereof which it contradicts or which are inconsistent therewith." *American Surety Co. v. School District,* 117 Neb. 6, 219 N. W. 583.

In other words, a contract incorporated into a pleading as part of a cause of action or defense controls the allegations which it contradicts. *Carey v. Zabel,* 112 Neb. 16, 198 N. W. 169; *Shafer v. Wilsonville Elevator Co.,* 121 Neb. 280, 237 N. W. 155; *Gibson v. Dawes County,* 129 Neb. 706, 262 N. W. 671.

"In passing on a demurrer to a petition, the court will consider an exhibit attached thereto and made a part thereof, if the allegations stated therein either aid the petition in stating a cause of action or charge facts going to avoid liability on the part of the defendant." *Carson v. City of Hastings,* 81 Neb. 681, 116 N. W. 673.

In the *Walker* case, every objection now made to the validity of the terms of the present contract was before this court, fully considered, and determined adversely to the contention of appellants. Under the principles announced in the above cases, the validity of the basic contract and agreement in such *Walker* case, including the competency of the plaintiff to make, carry out, and enforce the same, notwithstanding the fact that the bank had not subscribed to the instrument in suit, was challenged by the demurrer there under consideration, and properly therein determined. We find nothing presented in appellants' contentions which would require a reconsideration of the doctrines announced in the *Walker* case, and the same are adhered to.

"When, in any case, an exhibit so attached is the foundation of the cause of action or defense to which it relates, the validity or sufficiency thereof, as a matter of law, to constitute or establish such cause of action or defense, may be determined on demurrer to the pleading to which it is so attached." *Union Sewer Pipe Co. v. Olson,* 82 Minn. 187, 84 N. W. 756.

The present review is not a trial *de novo*. A jury having been waived, the findings and judgment of the trial judge have the force and effect of a jury's verdict. In so far as this result may be said to have been based on conflicting competent evidence, it is binding on this tribunal.

Read in the light of these principles, the record before us sustains the conclusion that those interested in this bank were of the opinion that, if this institution could be liquidated under the direction of its owners, it would pay out its creditors in full, and the necessity of enforcing the double liability of its stockholders would be avoided. A consultation with the then head of the State Banking Department was had on this subject on October 20, 1931. The contract in suit was prepared at Lincoln, and on October 27, 1931, two officers of the bank made a special trip to Lincoln to secure this contract. The emissaries of the bank returned to Albion the same evening, bringing the agreement with them. A meeting of the bank directors of this bank was held at its bank building that evening, and all directors were present. They accepted the terms of the contract, signed it, and voted to start liquidation under it the next day. The following day, October 28, 1931, the officers and directors started to liquidate the bank under this contract. On October 29, 1931, the newspaper in Albion, one of general local circulation, published on its front page a statement that this bank was being liquidated and the stockholders were guaranteeing the deposits. On October 31, 1931, this contract (now in suit), which had been obtained at Lincoln on October 27, 1931, was returned to the Department of Banking by the cashier of the bank, signed by all the officers and directors, and in his letter of transmittal, it was stated, viz.: "During the past two days we have paid the stated 20% to about 40% of our entire volume of deposits and to about 50% of our depositors. Not one has questioned our proposition or hesitated about signing the agreement. So far the arrangement looks good and the community is surely with us."

On November 17, 1931, the cashier forwarded to the

State Banking Department "property statements of the eight that constitute such board" (of directors). The record discloses that the other defendants executed single copies of the original contract, first referred to, one of the terms of which provided that "the execution of one copy by any of the parties shall be as binding as though said party had executed and delivered all of the copies."

The agreement in suit provided in part, viz.: "Whereas, it is the express intention of the stockholders, directors, and officers of said bank to pay each and every depositor and creditor in full and to that end to convert all of its assets into cash and distribute the same ratably and equitably among said depositors and creditors."

The defendants continued, under this contract, to liquidate until January 8, 1935, without molestation on the part of the stockholders, depositors or creditors.

It further appears that none of these defendants, now appealing, at any time notified either the Department of Banking or the creditors of the bank that they did not expect to be bound by this contract in suit. In 1933 several of these defendants filed claims against the estates of deceased fellow directors, and also against the estate of a nondirector stockholder, as contingent claims based upon this contract in suit.

The Department of Banking, relying upon this contract, permitted the defendants to continue to have the bank open thereunder until January 8, 1935. On the date last named, after there had been a failure to pay the depositors and creditors under this contract, the Department of Banking, under its statutory powers, took over the remaining assets of this bank, and instituted this action with the results as hereinbefore set forth.

We cannot accept the contention, under the facts in this record, that the contract in suit was not effective unless and until all creditors of this bank should sign it. No clause contained therein so stated. The evidence, direct and circumstantial, establishes a contrary conclusion.

In *Farmers State Bank of York v. Brock*, 120 Neb. 551,

234 N. W. 92, a case presenting similar questions, this court said:

"However, whether there was an agreement as to the number of stockholders who should sign is of small importance, as we view it. Whatever the discussion, or understanding, none of the creditors was a party to it; none of them was there or represented. Obviously an agreement such as is sought to be established by the defendants, and to which the creditors were not parties, and of which they had no knowledge, could not be operative as to them. *Kansas City Terra-Cotta Lumber Co. v. Murphy,* 49 Neb. 674.

"It is further contended by the defendants that the guaranty is not effective because it was not delivered to the officers of the bank by some one authorized to deliver it. There is some evidence in the record to the effect that neither Brock nor Dietrick, president and secretary, respectively, of the association, delivered it to the bank. In the circumstances, however, we are of the opinion that it is not of vital importance who delivered the guaranty to the bank. It was delivered presumably by some one authorized to do so. All of the defendant signers knew that it was with the bank, and that others making loans and extending other forms of credit to the association were relying upon the guaranty as security."

In view of the conduct of this banking business for some three years, and the acquiescence therein of stockholders, depositors and creditors in the manner in which it was carried on, it clearly appears that there was a universal reliance on this contract in suit. In fact, 269 depositors, representing $87,911.93 of the deposits, actually formally subscribed and accepted this contract.

This instrument provided for an absolute, not a conditional, guaranty of the payment of the bank's creditors in definite amounts at a time certain. The words of the guaranty contain and involve no such express condition as that upon which the defense in this case purports to be based or founded.

It also appears that the State Banking Department was

not apprised of defendants' present claims, nor in any manner chargeable with notice thereof, prior to its acceptance of this contract on its face duly executed by the signers thereof. Three years passed with the bank continuing under the terms of this obligation without objection, protest, or dissent by or on the part of any of the parties thereto. Thus, it clearly appears that, by their conduct, appellants waived this defense, if it ever had an existence. *Morton v. Harvey*, 57 Neb. 304, 77 N. W. 808; *Middleboro Nat. Bank v. Richards*, 55 Neb. 682, 76 N. W. 528.

We further find that the trial court committed no error in its refusal to reopen the case upon application of defendant Becker, there being no showing of diligence whatever.

Likewise, the trial court was correct in the exclusion of tendered proof as to declarations made by Wiegman, deceased. His so-called declarations, as offered by defendant Zuber, were clearly hearsay, and, considered as an entirety, not against interest, within the scope of the exceptions to the hearsay rule.

It follows, therefore, that the findings and judgment of the trial court find ample support in the evidence before us, and are

AFFIRMED.