DEPARTMENT OF BANKING, APPELLANT, V. RALPH HEDGES: ISAAC KURTZ ET AL., APPELLEES.

286 N. W. 277

FILED JUNE 2, 1939. No. 30575.

*Robert H. Downing* and *Harold Johnson,* for appellant.

*Perry, Van Pelt & Marti* and *Butler & James, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

MESSMORE, J.

The department of banking of the state of Nebraska, statutory receiver and liquidating agent of the Indianola State Bank, insolvent, brought this action in equity in the district court for Red Willow county, Nebraska, and by amendment to its petition filed April 21, 1938, alleged full right and authority to bring and maintain the suit. The action proceeds against defendants Kurtz and Lord, to determine the liability of each defendant and the amount to be contributed by him to the unpaid liabilities of the bank and for judgment to be entered against them for such amounts. The amended petition sets forth the liabilities of the bank and contains the following allegations: That the assets will be insufficient to pay the liabilities; that the bank was insolvent in January, 1934, which fact was admitted by the officers thereof who failed to restore solvency; that the bank was adjudged insolvent by the superintendent of banks January 15, 1934; that defendants, having full knowledge thereof, made no objection thereto; that the receiver then proceeded to liquidate the affairs of the bank under article 1, ch. 8, Comp. St. 1929, as amended in 1933; that creditors' claims were filed, classified and allowed, including claims of defendants Kurtz and Lord;

that dividends were ordered withheld on defendants' claims pending payment of their stockholders' liability; that defendants filed a petition in the district court, demanding payment of their dividends, and, pursuant to a stipulation of the parties and order of the court, furnished bonds, conditioned for the payment of their liabilities as such stockholders when determined, and dividends were paid to defendants; that the district court approved compromise settlements of doubtful assets of the bank, sales of real and personal property, and settlement of superadded liability of its stockholders, and made distribution of four dividends to its creditors.

The trial court sustained a demurrer to plaintiff's amended petition on several grounds. Plaintiff elected to stand upon its amended petition and not to plead further, resulting in a dismissal of the action, from which plaintiff appeals.

The first ground of the demurrer attacks the capacity of the plaintiff to bring and maintain this action. Plaintiff cites and relies on article 1, ch. 8, Comp. St. Supp. 1937, incorporating Senate File No. 263, passed by the 1933 session of the legislature (Laws 1933, ch. 18)—a comprehensive banking act creating a department of banking, superseding the department of trade and commerce, and providing for the regulation, supervision and control of going banks and the liquidation of insolvent banks, with resort to the judicial arm of government, as provided by the act.

*State v. Hoskins State Bank,* 132 Neb. 878, 273 N. W. 834, filed June 11, 1937, is cited by the defendants on the proposition: "The Department of Banking has no legal existence and therefore no capacity to prosecute this action." In the cited case the then attorney general applied to the district court to discharge a judicial receiver, appointed as such, and to substitute in such receiver's place a statutory receiver, as evidenced by article 1, ch. 8, Comp. St. Supp. 1937. Under the act there was no statutory authority for such receiver to act or accept an appointment as judicial

receiver. The opinion stated (p. 881): "It would seem that to make valid the appointment of an entity other than a natural person as a judicial receiver, such entity must be legally qualified by statute to be so appointed" and by strict construction of the statutes involved the court so decided. The power of the department of banking to sue was not an issue in the case. The word "entity" means a real being, existence. "Legal entity," therefore, means legal existence. The department of banking is a creature of statute. Under the statute its existence is perpetual, although its membership may change, and under the act it is charged with important duties. It has a superintendent of banking and other assistants, as shown by the act. It, therefore, has a legal existence. (The method of liquidating banks in Nebraska has always been provided by statute.)

In the case of *State v. State Bank of Minatare,* 123 Neb. 109, 242 N. W. 278, the court pointed out an avenue whereby the legislature might provide a method of centralized and unified liquidation by the creation of an administrative board, with powers to liquidate the affairs of insolvent state banks, independent of the judiciary, resulting in the passing of Senate File No. 263 by the 1933 session of the legislature.

The capacity of state agencies created by legislative act to maintain suit is expressed in *In re Burk,* 66 Ind. App. 435, 118 N. E. 540, where the industrial board, created by statute and expressly authorized to sue, was an agency of the state government and such a legal entity as could sue to recover a penalty provided for in the workmen's compensation act, the benefit inuring to the state. See, also, *Albert v. Milk Control Board,* 210 Ind. 283, 200 N. E. 688; *State v. Bates,* 317 Mo. 696, 296 S. W. 418.

In the title to chapter 18, Laws 1933, appears the following language: "To provide for the prosecution and defending of any and all suits by the Superintendent of Banks in the name of the Department of Banking, the delinquent bank or in his own name as Superintendent of Banks * * * and empower the Department of Banking as receiver and

liquidating agent of insolvent banks to enforce the constitutional provisions relative to stockholders' liability." See section 8-1,130, Comp. St. Supp. 1937, and, as to prosecution and defending of all suits as outlined in the title of the act, see section 8-1,129, Comp. St. Supp. 1937. The supreme court of Nebraska has recognized the right to sue by the superintendent of banks.

In *Department of Banking v. Walker*, 131 Neb. 732, 269 N. W. 907, the department of banking brought a suit as receiver and liquidating agent. The case of *Department of Banking v. Flotree*, 135 Neb. 416, 281 N. W. 857, was an action at law on contract, guaranteeing payment of the creditors and depositors of the bank named. It was therein held: "Plaintiff possessed ample powers to bring and maintain this action,"—citing *Department of Banking v. Walker, supra.* See, also, *Luikart v. Bunz*, 125 Neb. 867, 252 N. W. 473; *Farmers State Bank v. Luikart*, 131 Neb. 692, 269 N. W. 627; *State v. Odd Fellows Hall Ass'n*, 123 Neb. 440, 243 N. W. 616.

In 9 C. J. S. 170, sec. 88, it is said: "Under constitutional or statutory authorization, an action to enforce the stockholders' liability may properly be brought by a state superintendent or commissioner of banks liquidating the affairs of the bank."

We conclude that the department of banking, as created by chapter 18, Laws 1933, is such a legal entity as may be expressly authorized and empowered, by virtue of said act, to sue to enforce collection of stockholders' liability.

The demurrer was sustained further on the ground that the action was prematurely brought, and that there had not been an adjudication of insolvency of the Indianola State Bank, as required by the 1930 constitutional amendment.

Defendants' position is that the laws in force at the time they became stockholders in the Indianola State Bank in 1931 constituted a part of their contract and contemplated a judicial hearing to have the bank adjudged insolvent, and further contemplated the appointment of a judicial receiver by the court. The petition in the instant case does

not show such judicial adjudication had been made, but pleaded a finding of insolvency by an administrative officer.

In the case of *Luikart v. Paine,* 126 Neb. 251, 253 N. W. 86, it was said (p. 253) : "Stockholders' double liability in banking corporations is contractual obligation and by construction constitutional provisions in effect at the time of purchase of corporate stock are material parts thereof." The precise question presented was the nature of the obligation created by the purchase of bank stock in 1925. The contractual obligation created was with respect to the then provisions of the Constitution, and the constitutional double liability of stockholders in banking corporations was, prior to the amendment of 1930, a secondary liability, to be enforced only after assets had been exhausted, and the amount due on liability had been judicially determined, so that the constitutional amendment of 1930, if applicable to stock purchased prior to its adoption, would materially change the contractual liability. The assets had not been exhausted, and the amount necessary to pay all creditors had not been judicially determined. Therefore, the action was prematurely brought.

In *Luikart v. Higgins,* 130 Neb. 395, 264 N. W. 903, the decision in *Luikart v. Paine, supra,* was adhered to. The court held: "A suit to recover stockholders' constitutional double liability on corporate bank stock purchased prior to 1930 amendment, brought before the corporate assets are exhausted and before the exact amount justly due is judicially determined, is premature." And it was further stated, in substance, that the 1930 amendment changes the time for payment of stockholders' double liability from the time the assets of the bank are exhausted to immediate payment on adjudication of insolvency. Defendants contend that in the instant case the change in time of payment accelerates the date the liability is due, and thus changes the obligation, since the time and method are material parts of a contractual obligation and such change thereof constitutes impairment of the contract. U. S. Const. art. I, sec. 10. There is no change in the status

of the obligation; that is, from a secondary to a primary obligation, and this question is not involved.

The reason for the holding in the foregoing cases is apparent from the analysis given, and they are distinguished from the instant case, as will appear later in the opinion.

In *Elmen v. State Board of Equalization and Assessment,* 120 Neb. 141, 231 N. W. 772, it was held: "The words and terms of a constitutional provision are to be interpreted and understood in their most natural and obvious meaning, unless the subject indicates or the text suggests that they have been used in a technical sense, and while the Constitution, as amended, must be construed as a whole, still where the words employed in a constitutional provision are plain, direct, and unambiguous, no interpretation is necessary to ascertain their meaning, for courts may not supply what they deem unwise omissions, or add words which substantially add to or take from the Constitution as framed." Cases and texts cited.

In 1930, section 7, art. XII of the Constitution of Nebraska, as amended, provided: "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors over and above the amount of stock by him held to an amount equal to his respective stock or shares so held, for all its liabilities accruing or existing while he remains such stockholder, and all banking corporations shall publish quarterly statements under oath of their assets and liabilities. The stockholder shall become individually responsible for the liability hereby imposed, immediately after any such banking corporation, or banking institution *shall be adjudged insolvent,* and the *receiver* of said corporation or institution shall have full right and lawful authority, as such receiver, forthwith to proceed by action in court to collect such liabilities." (Italics ours.) Prior to the enactment of section 8-1,130, Comp. St. Supp. 1937, hereinafter set out, section 8-190, Comp. St. 1929, was in force, providing for procedure in insolvency, and providing, in substance, for a judicial determination of insolvency by a court upon evidence presented.

Section 8-1,130, Comp. St. Supp. 1937, provides: "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors over and above the amount of stock by him held to an amount equal to his respective stock or shares so held, for all its liabilities accruing or existing while he remains such stockholder, and all banking corporations shall publish quarterly statements under oath of their assets and liabilities. The stockholder shall become individually responsible for the liability hereby imposed, immediately after any such banking corporation, or banking institution shall be declared insolvent, and the Department of Banking as Receiver and Liquidating Agent of said corporation or institution shall have full right and lawful authority, as such Receiver and Liquidating Agent forthwith to proceed by action in court to collect such liabilities."

It will be observed that in the constitutional amendment the word "adjudged" was used in place of the word "declared" in the statutory provision above set out; that instead of the word "Receiver," as used in the constitutional amendment, the statutory provision uses "Department of Banking as Receiver and Liquidating Agent," and in place of the words "such Receiver" in the constitutional amendment, the statutory provision uses "such Receiver and Liquidating Agent."

We have above set forth the constitutional provision and the sections of the statute involved, the comparison thereof and the changes in the language of the statute, as compared with the constitutional amendment, and upon which the defendants rely.

The word "adjudged," as used in the constitutional amendment, is interpreted by the defendants to mean a judicial determination and not a determination by an administrative finding and declaration.

In 2 C. J. S. 48, it is said: "While it has been held that the term ("adjudged") implies a judicial determination of a fact, and the entry of a judgment, it does not necessarily refer to a final judgment but may be applied as well to

interlocutory orders or decrees of court; and in particular connections it has been held that the word does not necessarily carry with it the idea of a judgment according to law. * * * The term has been held to mean adjudicated or judicially determined; decided or determined; deemed; found or decided." It may not be final or definite.

In *Page v. Jones*, 7 Fed. (2d) 541, it was held: "Indispensable conditions precedent to the enforcement of stockholders' double liability, under Comp. St. sec. 9689, are, first, adjudication of Comptroller of the insolvency of the bank, and that it is in liquidation, and, secondly, adjudication and order of assessment for requisition on the stockholders of the bank." To the same effect is *Smith v. Shepler*, 8 Cal. App. (2d) 717, 48 Pac. (2d) 999.

The word "adjudged" is used in various forms in reference to administrative officers, boards, commissions, departments, and such boards, administrative officers and departments adjudge and determine facts and conditions. *Opinion of the Justices*, 87 N. H. 492, 179 Atl. 344, 110 A. L. R. 819, held: "A valid administrative judgment has the same force of obligation and finality as a judicial one."

The use of the word "adjudged" in the constitutional amendment did not, in the absence of language requiring a judicial adjudication, bar the right of the superintendent of banks, an officer of the banking department, created by the legislature of this state, to declare, and by so doing adjudge, a bank insolvent. The word "declared," as appearing in section 8-1,130, Comp. St. Supp. 1937, is analogous to "adjudged," in the sense in which the word is used in the constitutional amendment, and does not deviate from or determine a distinction in this respect.

The word "receiver," as used in section 7, art. XII of the Constitution of Nebraska, does not necessarily mean a judicial receiver, and the power to appoint a receiver is not vested solely in the judicial branch of government.

In the case of *Mercantile Warehouse Co. v. Johnson*, 138 Kan. 889, 28 Pac. (2d) 775, it was held: "Under the statutes of this state, the appointment by the bank commissioner of

a receiver of a failed state bank is not a judicial act." And in quoting from *Jeffries v. Bacastow,* 90 Kan. 495, 135 Pac. 582, it was said:

" 'The appointment by the bank commissioner of a receiver for an insolvent state bank, under the banking act of this state, is not a judicial act which must be performed by a court and not by an executive officer.

" 'The fact of insolvency having been discovered, the statute directs the bank commissioner's course, and the designation by him of a person to wind up the affairs of the bank is no more a judicial act than his order to the board of directors to remove a dishonest cashier. His powers are purely administrative and in no way infringe upon the ancient authority of courts to determine rights of person and property in specific controversies pending before them.' " See, also, High, Receivers (4th ed.) 52, sec. 39.

In *Picklesimer v. Morris,* 101 W. Va. 127, 132 S. E. 372, it was held: "The receiver of an insolvent banking institution appointed by the commissioner of banking, with the consent of the governor, is a statutory receiver and is not subject to the control of the courts in the process of liquidation of the insolvent bank unless he fails or refuses to act, or acts to the prejudice of another's rights in the discharge of his statutory duties." See *People v. Niehaus,* 356 Ill. 104, 190 N. E. 349; *Carey v. Giles,* 9 Ga. 253.

We conclude that the 1930 amendment to the Constitution in the use of the word "receiver" did not specifically refer to a judicial receiver, to be appointed by a court, and language to such effect is absent from the constitutional amendment.

In 2 Morse, Banks and Banking (5th ed.) sec. 677, it is said: "Where, at the time of the insolvency, the only remedy against the shareholders was by proceedings in equity on the part of the bill-holders, and subsequently, pending the liquidation of the affairs of the bank, a new statute was passed creating the machinery of the bank commissioners, and providing a simple and expeditious means whereby

they could enforce collection from shareholders (the amount of actual liability not of course being varied), it was held that the shareholders in the already insolvent bank could not object to the application of this new statute to their own case. It bore upon the remedy only, not upon the liability."

In 3 Zollmann, Banks and Banking, p. 380, it is said: "A statute which confers this power is constitutional, even where there is a constitutional provision which imposes the liability but fails to state by whom this liability is to be enforced. It is immaterial to the stockholders whether their liability is enforced by a creditor, a receiver, or the superintendent" of banks.

In 9 C. J. S. 170, sec. 88, it is said:

"However, unless the Constitution specifically prescribes and limits the persons by whom such actions may be brought, it is within the power of the legislature to authorize particular persons to sue, and statutes conferring such authority have been sustained. Further, since such legislation is procedural, and since methods of procedure which do not affect the substantial rights of the parties are within the control of the legislature where no new right is created nor any penalty imposed, a statutory change as to the person who may enforce the liability may apply to stockholders who became such before its enactment as well as to those who became such thereafter. From this it follows that the authority of a particular officer or person to sue must be determined by the law as of the date at which suit is begun.

"Under constitutional or statutory authorization, an action to enforce the stockholders' liability may properly be brought by a state superintendent or commissioner of banks liquidating the affairs of the bank."

When defendant stockholders purchased the stock in the Indianola State Bank, the constitutional provision determining that liability on said stock attached when the bank was adjudged insolvent was in full force and effect. This the stockholders knew. They obtained no vested right in

the manner of procedure. The situation is different and distinct from that in *Luikart v. Higgins, supra*. Mere methods of procedure in actions on contract do not affect the substantial rights of the parties and are always within the control of the state. It is to be assumed that parties make their contracts with reference to the existence of such power in the state.

In *Luikart v. Bunz, supra,* the effect of the decision is: "The state Constitution changing procedure in a suit on contractual liability does not impair obligations of contracts and is applicable to existing contracts. No vested rights are impaired by statutory or constitutional provision which creates a remedy for an existing right." See *Denny v. Kennedy,* 229 Ky. 178, 16 S. W. (2d) 1030; *In re Davis,* 103 Neb. 703, 173 N. W. 695.

We hold that article 1, ch. 8, Comp. St. Supp. 1937, does not change the liability of stockholders in banking corporations. The changes occurring therein since defendants acquired their stock relate merely to procedure or remedy, and such methods of procedure which do not affect the substantial rights of the parties are within the control of the legislature, and are not violative of section 10, art. 1 of the Constitution of the United States.

The trial court sustained the demurrer on the further ground that the act passed by the 1933 session of the legislature, in attempting to designate the department of banking as receiver of the bank, was unconstitutional in that it sought to confer judicial powers upon the executive department, in violation of section 1, art. II of the Constitution of Nebraska, which reads as follows: "The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others except as hereinafter expressly directed or permitted."

The Constitutions of the respective states are the supreme law within their respective jurisdictions and are limita-

tions of power. It is necessary that authority exist somewhere to determine whether or not the limitations have been exceeded. From the early history of this country, and after much clash of opinion and sometimes bitter argument, the doctrine is now firmly established that this delicate duty devolves upon the judiciary.

Defendants contend that the following sections of article 1, ch. 8, Comp. St. Supp. 1937, set out in substance, constitute an encroachment upon the judicial powers, in violation of section 1, art. II of the Constitution of Nebraska:

Section 8-190, Comp. St. Supp. 1937, passed in 1933, provides in part: "Upon determination of insolvency of any bank by the Superintendent of Banks, and failure of owners thereof to restore solvency within the time and in the manner provided by law, or upon violation of the laws of the state by the bank, the Superintendent of Banks shall make a finding in writing of the condition of the affairs of such bank and a declaration of insolvency; said finding and declaration shall be filed with the clerk of the district court of the county in which said bank is located."

Prior to 1933, under the same statute, which the 1933 act amended, the district court performed the function of finding and determining the insolvency of a bank and directed liquidation. Section 8-191, Comp. St. 1929, provides, in substance, that jurisdiction is conferred upon the judge of the district court to act in connection with the insolvency, liquidation or reorganization of a bank in chambers, with the same effect as in open court. And section 8-192, Comp. St. Supp. 1937, designates the department of banking as receiver and liquidating agent of failed or insolvent banks, and is nearly analogous to section 8-192, Comp. St. 1929, wherein it was stated that the secretary of trade and commerce should be the sole and only receiver of failed and insolvent banks. By section 8-194 (a), Comp. St. Supp. 1937, as enacted in 1933, the superintendent of banks was given power to appoint deputies and assistants, with powers, specified in a certificate of appointment, to assist him in the liquidation; and copy of the certificate to be filed in the

office of the clerk of the district court of the county in which the bank is located. Powers are also given the superintendent of banks to employ such counsel and expert assistants as may be necessary to perform the work of liquidation, and he, the superintendent of banks, subject to the approval of the district court of the county in which the bank is located, fixes the compensation for services. rendered by special deputies and assistants, which shall be taxed as costs of the litigation.

Section 8-199, Comp. St. Supp. 1937, as enacted in 1933, provides: "Upon the expiration of the time fixed for presentation of claims, the Superintendent of Banks shall thoroughly investigate all claims and file with the clerk of the district court of the county in which said bank is located, a complete list of all claims against which he knows of no defense, and which, in his judgment are valid, and designating their priority of payment, together with a list of the claims which in his judgment are invalid, and he shall also file an order allowing or rejecting said claims as classified. When the Superintendent of Banks reclassifies or rejects a claim, which rejection shall be made when he doubts the justice of a claim, he shall serve written notice of such reclassification and/or rejection upon the claimant, by registered mail, and file with the clerk of the district court of the county in which the bank is located an affidavit of the service of such notice, which affidavit shall be *prima facie* evidence of such service. Such notice shall state therein the time and place for the filing by claimant of his objections to the classification, reclassification or rejection of his claim."

Section 8-1,131, Comp. St. Supp. 1937, enacted in 1933, provides for the superintendent of banks to collect all debts due and belonging to such bank, and if he desires to sell or compromise any or all or doubtful debts, or all of the real and personal property of such bank, he shall apply to the district court of the county in which the bank is located for an order permitting such compromise or sale on such terms and in such manner as the court may direct.

Section 8-1,133, Comp. St. Supp. 1937, provides: "At any time after the expiration of the date fixed for the presentation of claims, the district court may, upon application of the Superintendent of Banks, by order authorize the Superintendent of Banks to declare out of the funds remaining in his hands after the payment of expenses one or more dividends, and at the earliest possible date he shall declare a final dividend as may be directed by the district court of the county in which the principal office of such bank is located." And section 8-1,132, Comp. St. Supp. 1937, provides that the superintendent of banks shall file a report of his acts of liquidation of each insolvent bank with the clerk of the district court from time to time, and upon the completion of the liquidation file a final report. Notice may be given as the court may direct, and upon hearing thereon and approval thereof by the court such liquidation shall be declared closed and the corporation dissolved.

Subdivision (b) of section 8-194, Comp. St. Supp. 1937, in part provides: "The Secretary of the Department of Trade and Commerce shall from time to time allocate to the various receiverships the expense of the department of trade and commerce, by reason of such receiverships, other than the compensation and expenses of the deputy receiver in charge, and certify to the courts in which the receiverships are pending the amount so allocated which shall be taxed and paid as costs in the receivership."

The defendants contend that the language "in which the receiverships are pending" constitutes a judicial proceeding. This provision of the statute (Comp. St. 1937, sec. 8-194, subd. (b)), passed by the 1933 session of the legislature, referred to receiverships which were actually pending in the several courts, and likewise referred to the secretary of the department of trade and commerce, who was the chief officer of the banking department under the former manner of liquidation. The act was introduced prior to the enactment of Senate File No. 263, the 1933 administrative banking act, approved May 13, 1933, with an emer-

gency clause. The meaning of this section of the statute is obvious, and it is not a part of the 1933 banking act.

Cases from other jurisdictions, involving provisions of statutes similar to those questioned here, follow:

In *Gordon v. Washington,* 73 Fed. (2d) 577, it was held: "Pennsylvania Code providing that Secretary of Banking, upon taking possession of property of an institution as receiver, shall file as plaintiff certificate of possession in judgment index in office of prothonotary in county in which institution is located, does not, in absence of statute, subject secretary or institution to jurisdiction of state court of that county, although secretary may invoke its jurisdiction at proper time."

In *Cochran v. Bennett,* 37 Ga. App. 202, 139 S. E. 428, it was held: "The judge of the superior court, when passing upon an application of the superintendent of banks for permission to sell the assets of a bank which has been taken over by the superintendent (See Nebraska statutory provision, Comp. St. Supp. 1937, sec. 8-1,131), and in passing an order authorizing a sale of the assets of the bank by the superintendent * * * is not administering the assets of the bank, and passes upon and adjudicates no rights of parties, but is merely, under statutory authority, directing a state officer who is not an officer or receiver of the court, in the discharge of a statutory duty." See *Bennett v. Duke,* 38 Ga. App. 598, 144 S. E. 686.

In *Mercantile Warehouse Co. v. Johnson, supra,* it was held: "The fact that a receiver of a failed state bank applies to a district court for an order to sell or compound bad or doubtful debts due to the bank or to sell real or personal property, or for an order fixing a time within which claims must be presented or be barred, does not vest the court with a continuing general jurisdiction over the receiver, so that a claimant, whose claim has been refused by the receiver, may thereafter file an application in such proceeding in that court for the allowance of his claim and procure a restraining order against the receiver not to proceed with the payment of liquidating dividends. If the

claimant wishes to establish his claim, it should be done in an independent action."

In *Robinson v. People's Bank of Leslie*, 266 Mich. 178, 253 N. W. 259, the commissioner of banking, assuming to act under the Michigan statutes (Act No. 32, Pub. Acts 1933), took over the custody, management and control of a bank. The court held that such act "does not vest in banking commissioner authority of a judicial nature as receiverships for liquidation and reorganization proceedings are subject to review by the courts and does not, therefore, violate Constitution 1908, art. 4, sec. 2, providing that no person belonging to one department of government shall exercise powers properly belonging to another."

"The statute making secretary of banking department receiver of institution whose property he had taken over, and making him responsible to court in which certificate of possession was filed, 'subjects' secretary to jurisdiction of particular court only in sense that provision points out state court which shall have jurisdiction when such jurisdiction is invoked." 3 Michie, Banks and Banking, 1939 Supp. p. 36. See *Gordon v. Washington, supra*, affirming *Washington v. Gordon*, 8 Fed. Supp. 913.

In *Burket v. Bank of Hollywood*, 61 Pac. (2d) (Cal. App.) 50, it was held: "Liquidation of banks under superintendent of banks is not a 'judicial function' but an 'administrative power' conferred by the Legislature, and the court has no inherent power to ameliorate the rigor of the provision of such statutory directions as are prescribed." See *State v. Norman*, 86 Okla. 36, 206 Pac. 522; *Lyon v. McKeefrey*, 171 Fed. 384, 96 C. C. A. 340; *Craughwell v. Mousam River Trust Co.*, 113 Me. 531, 95 Atl. 221.

In *Farmers State Bank v. Luikart*, 131 Neb. 692, 269 N. W. 627, filed November 12, 1936, in speaking of the administrative banking act of this state, the court said (p. 694):

"The legislature intended to provide for an administrative receivership of banks independent of judicial control. Section 8-190, Comp. St. 1929, as amended by section 53,

ch. 18, Laws 1933, as amended by section 1, ch. 16, Laws 1935. * * *

"The amendment made it manifest that the legislative intention was to establish an administrative receivership of banks, and the only question for the court to determine was the insolvency of the bank and failure to restore to solvency. If it is established that the bank is insolvent and its stockholders have failed to restore solvency, the superintendent has acted within his powers."

The appellees brought suit against the banking department of this state to take charge of the bank and liquidate it. The trial court issued an injunction against the superintendent of banks, as provided in the administrative act (Comp. St. Supp. 1935, sec. 8-190), when the officers, directors, etc., of a failed bank feel aggrieved, they may invoke the aid of a court by appeal to determine the question of solvency. This court reversed the lower court. The holding in the case is significant. *

In reference to the foregoing provisions of the statute set out in substance, and referring to section 8-192, Comp. St. Supp. 1937, there is no delegation of judicial power to an executive department evident in this provision of the statute, unless the power to be a bank receiver is strictly judicial. Here the legislature makes the appointment, and the only power it delegates to an executive department is the power to be a receiver.

The next opportunity for controversy was over the allowance of claims. Comp. St. 1929, sec. 8-1,100, as amended. The stockholders in the instant case invoked the jurisdiction of the court for the payment of claims on their deposit, and on stipulation of the parties their dividends were, by the court, ordered paid to them upon their furnishing bonds to insure the payment of the liability here sued upon. The bonds were given and approved by the clerk of the district court as ordered by the court. See *Bissell v. Heath*, 98 Mich. 472, 57 N. W. 585.

In no instance does the administrative receivership act of 1933 provide for executive adjudication of controversies.

When exercise of judicial power is necessary to effectuate performance of various administrative functions necessary to liquidation, the judicial power is invoked and the statutes so require.

Statutes conferring upon administrative officers and agents quasi-judicial powers and duties, wherein they have been interpreted by other states, have uniformly been held not to be unconstitutional as encroachments upon the judicial branch of government, and this is especially true where such powers and duties relate to matters which are peculiarly affected with public interest or are subject to regulation under police powers, or where provision is made for appeal from decisions of such agencies to the courts.

As stated in the annotation in 78 A. L. R. 774: "Under all statutes thus far brought in question, the power given administrative officers to take charge of the affairs and property of insolvent banks, or those in an unsafe condition, and, if necessary, or under stated circumstances, to levy an assessment against stockholders, has been upheld, as against the constitutional objection that such power is judicial and may not be validly conferred upon administrative officers. The view generally taken, although language bearing on the point is not always precise, is that power of the sort in question is not in strictness, or in the constitutional sense, judicial, but consists merely of a practical discretion reasonably incident to the exercise of police power." See 7 Am. Jur. 34, sec. 14. Agreeing with the principle announced in the above annotation are decisions of the United States, and of the courts of Arkansas, California, Georgia, Kansas, Kentucky, Massachusetts, Minnesota, Nevada, and West Virginia. See, also, *Cosmopolitan Trust Co. v. S. L. Agoos Tanning Co.*, 245 Mass. 69, 139 N. E. 806.

While the federal Constitution contains no express provision prohibiting the exercise of judicial power by persons other than judicial officers, as does that of this state, it provides for three departments of the government, the legislative, the executive, and the judicial, and, with the limita-

tions provided for therein, all judicial power is vested in its courts.

As early as 1869, in *Kennedy v. Gibson,* 75 U. S. 498, 19 L. Ed. 476, the federal supreme court sustained the action of the comptroller in appointing a receiver of an insolvent bank, and ever since that time has recognized the validity of the comptroller's authority. The question, whether judicial power was conferred upon the comptroller of the currency by the acts of congress, empowering him to take possession of and liquidate national banks and assess their stockholders, was raised in *Bushnell v. Leland,* 164 U. S. 684, 17 S. Ct. 209. The court briefly disposed of the matter, holding that its prior decisions, therein cited, affirming the validity of diverse acts of the comptroller and his agents in the matter of closing and liquidating national banks, were decisive of the question. The decision is a direct holding that judicial power is not exercised by the comptroller in the closing and liquidation of national banks or in assessing the stockholders thereof; that the acts of congress in question do not attempt to vest judicial power in such officer.

In *Picklesimer v. Morris, supra,* it was said (p. 131) : "Many decisions uphold the constitutionality of acts for winding-up the affairs of insolvent banks by a state officer or department as a valid exercise of the police power. The business of banking is so intimately interwoven with the business of the state, that public welfare demands that it should be supervised, visited, examined, controlled and liquidated, if need be, by experts. The exercise of such power by the Legislature is dictated and warranted by sound public policy. *Koch v. Missouri-Lincoln Trust Co.,* 181 S. W. (Mo.) 44; *State v. Scranton Title Guaranty, etc., Co.,* 27 Idaho, 752, 152 Pac. 189; *McDavid v. Bank of Bay Minette,* 193 Ala. 341, 69 So. 452; *Noble Sta⁺e Bank v. Haskell,* 219 U. S. 104, 31 S. Ct. 186, Ann. Cas. 1912A, 487." See, also, *Bryan v. Bullock,* 84 Fla. 179, 93 So. 182; *Felton v. Bennett,* 163 Ga. 849, 137 S. E. 264; *Coffin Bros. & Co. v. Bennett,* 164 Ga. 350, 138 S. E. 670, affirmed in 277 U. S. 29, 48 S. Ct. 422.

In *American State Bank v. Jones*, 184 Minn. 498, 239 N. W. 144, the commissioner of banks brought an action to recover an assessment levied by him against a stockholder of an insolvent bank to enforce stockholders' double liability. The defense was that such action was unconstitutional and void under section 1, art. 3 of the Minnesota Constitution, as being an attempt to delegate and confer judicial power on the commissioner of banks; also void and unconstitutional under section 7, art. 1 of the Minnesota Constitution. Section 1, art. 3, of the Minnesota Constitution, refers to the three separate parts of government. The opinion (p. 499) said: "The commissioner of banks is an administrative officer of the executive department of the state. He is given power to ascertain, in the first instance, without notice or hearing, whether in fact the bank is insolvent or unsafe or has violated its charter or the state laws governing banks. For that purpose he is authorized to examine the books, records, and business of the bank. He is not required to make any formal decision or findings. * * * If the bank feels aggrieved, it may apply to the district court to enjoin further proceedings and have a trial on the merits of the right of the commissioner to take possession and liquidate its business." (The same right prevails in this state.) It was held not to be an exercise of judicial power within the meaning of the constitutional provision cited. On page 500 we find this language: "Considering the entire law relating to the powers of the commissioner, and relating to banks and banking, it seems clear that the powers conferred are administrative rather than judicial. Executive officers are constantly required to pass judgment upon questions of fact arising in the daily performance of their duties and to act thereon, but that does not amount to the exercise of judicial powers. * * * At most, such determinations by an executive officer, while in a sense judicial, are but administrative acts requiring the exercise of common sense judgment. Such acts are sometimes characterized as quasi judicial, but not as constituting an exercise of judicial power."

In *Jeffries v. Bacastow, supra,* the statute conferring authority upon the bank commissioner is somewhat similar to that here involved. The court said in the opinion (p. 497) : "The defendants take the position that this law is unconstitutional. The argument is that the appointment of a receiver is a judicial act to be performed by a court of equity, and that it cannot be performed by an executive officer, like the bank commissioner, under a government framed like ours upon the theory of a separation of powers. This argument is built entirely upon a name. The person spoken of as 'receiver' might just as well have been called a special deputy bank commissioner. Before insolvency the management of a bank is placed by law in the hands of a body of men, created by statute, designated a board of directors, who act under the supervision and in many respects under the control of the bank commissioner. After insolvency, and in certain other contingencies, this management is exercised by a single official chosen by the bank commissioner, who is called, for convenience and by analogy, a receiver."

In *State v. Neble,* 82 Neb. 267, 117 N. W. 723, the court, in discussing the superintendent of public instruction, stated: "Yet it is within common knowledge that he is clothed not only with executive, but judicial, and to some extent with legislative powers, the judicial to perhaps as full extent as the executive. His decisions (judicial) upon all subjects determinable by him within his department are binding upon county superintendents, teachers and school boards, unless reversed or overruled by a court having the required jurisdiction. * * * The conferring of judicial powers upon an executive or administrative officer can extend to such acts as may be necessary to enable the proper discharge of the duty, or to set in motion such other agencies as may be necessary to the complete discharge of the duty required to be performed."

By a long line of decisions, this court has been committed to the proposition that the department of public works is an administrative body, possessing quasi-judicial

powers, and is not in violation of section 1, art. V of the Nebraska Constitution, the section referring to powers vested in the courts. See *Dawson County Irrigation Co. v. McMullen*, 120 Neb. 245, 231 N. W. 840; *Shumway v. Warrick*, 108 Neb. 652, 189 N. W. 301; *In re Application of Babson*, 105 Neb. 317, 180 N. W. 562; *State v. Oliver Bros.*, 119 Neb. 302, 228 N. W. 864; *Investors Syndicate v. Bryan*, 113 Neb. 816, 205 N. W. 294; *Morrill County v. Bliss*, 125 Neb. 97, 249 N. W. 98.

Before the enactment of laws providing for administrative or executive receiverships in the different states, the process of liquidating insolvent banks extended over a period of some considerable time, engendering public complaint and criticism. The United States government early recognized the need of expeditious, economical and efficient administration of insolvent banks and, by legislation, met the need, and the legislatures of the various states, following the example set by the United States government, enacted legislation for the same purposes. Nebraska, in 1933, by its legislature, conceived the need of such legislation and followed the example set by the United States and the various states.

The statute creating administrative receiverships, enacted in 1933 (Comp. St. Supp. 1937, ch. 8, art. 1), involved in this proceeding, is not unconstitutional as an encroachment upon judicial power, and is not violative of section 1, art. II of the Constitution of Nebraska.

For the reasons given herein, the trial court erred in sustaining defendants' demurrer to plaintiff's amended petition. The judgment is reversed and the cause remanded for further proceedings.

REVERSED.